

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-2007

# Bordes v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2197

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Bordes v. Comm Social Security" (2007). *2007 Decisions*. Paper 1087.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1087

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-2197
_____

PAULINE BORDES
Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 04-cv-05586
(Honorable Dennis M. Cavanaugh)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 26, 2007

Before: SCIRICA, *Chief Judge,* FUENTES, and ALARCÓN,[*] *Circuit Judges.*

(Filed: May 18, 2007)

_____

OPINION OF THE COURT
_____

[*]The Honorable Arthur L. Alarcón, Senior Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

ALARCÓN, *Circuit Judge*.

Pauline Bordes appeals from the District Court's order remanding the Commissioner of Social Security's final decision denying Ms. Bordes's application for a period of disability and disability benefits under §§ 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. Ms. Bordes argues that the procedures leading to the denial decision were fundamentally unfair, that the denial decision was not supported by substantial evidence, and that the District Court abused its discretion by remanding her case for further proceedings instead of reversing and directing an award of benefits. We affirm the District Court's judgment because the procedures leading to the Commissioner's denial decision were not fundamentally unfair. We also conclude that the Commissioner failed to consider certain evidence in the record adequately, and that the record is not sufficiently developed to warrant reversal and an award of benefits.

**I**

Ms. Bordes, a former factory worker, applied for disability benefits on March 12, 1997. R. at 122. Her application stated that she suffered from back pain, headaches, dizziness, coughing, shortness of breath, chest pain, blurred vision, anxiety, and depression. *Id.* Ms. Bordes also filled out a Social Security Administration ("SSA") form appointing as her personal representative attorney Joel M. Solow of the law firm

Freeman & Bass.[1]  R. at 19.  The Commissioner denied her application on August 7,

1997.  R. at 51-55.

On August 20, 1997, Freeman & Bass sent the SSA an unsigned, computer-typed

letter on Freeman & Bass letterhead, requesting reconsideration.  R. at 58.[2]  Freeman &

Bass also sent an SSA "Request for Reconsideration" form on September 16, 1997,

bearing Ms. Bordes's signature and an unintelligible signature next to the heading

"Signature or Name of Claimant's Representative."  R. at 56.  The request for

reconsideration was denied on February 20, 1998.  R. at 59-61.

On February 25, 1998, Freeman & Bass sent an unsigned, computer-typed letter on

Freeman & Bass letterhead requesting a hearing before an administrative law judge

("ALJ").[3]  R. at 64.  Freeman & Bass also sent an SSA "Request for Hearing" form on

March 21, 1998, filled out by hand.  R. at 62.  In a space on the form marked

"representative's signature," the form bears the handwritten words "Freeman & Bass by:"

---

[1]The SSA's Hearings, Appeals and Litigation Law Manual ("HALLEX") provides that "[a] person claiming a right or benefit under titles II, XVI, and XVIII of the Social Security Act (the Act), as amended, may appoint an attorney or other qualified individual to represent him or her in dealings with the Social Security Administration (SSA)." HALLEX § I-1-1-1, *available at http://www.ssa.gov/OP_Home/hallex/I-01/I-1-1-1.html*.

[2]The letter's closing read, "Very truly yours, FREEMAN & BASS," followed with the typed words "BY: MICHAEL BASS."  R. at 58.

[3]This second letter also closed with, "Very truly yours, FREEMAN & BASS," followed with the typed words "BY: MICHAEL BASS."  R. at 64.

followed by an unintelligible signature. R. at 62. The request for a hearing was granted

on April 6, 1998, and the hearing was held on March 16, 1999. R. at 65-67.

On August 23, 1999, the ALJ issued a partially favorable decision finding that Ms.

Bordes had been disabled since April 26, 1996, but not prior thereto.[4] R. at 79-84. On

September 1, 1999, Freeman & Bass sent an unsigned, computer-typed letter to the

Appeals Council on Ms. Bordes's behalf, stating in relevant part:

> We hereby serve upon you through this letter a formal
> demand that the matter be appealed to the Appeals Council of
> the Social Security Administration. It is our contention that
> the denial by the Administrative Law Judge was improper,
> contrary to law, and a violation of our client's rights. Kindly
> review this matter at the Appeals Council and advise our
> office of the disposition.
>
> Respectfully yours,
>
> FREEMAN & BASS

R. at 87. Under "FREEMAN & BASS," appeared the word "By:" without any name or

signature. *Id.*

On February 14, 2003, the Appeals Council issued an order vacating the ALJ's

August 23, 1999 decision and remanding it for further proceedings. R. at 88-91. In its

order, the Appeals Council stated that the ALJ's decision "does not provide a proper

---

[4]This date is apparently based on the date of a medical examination of Ms. Bordes submitted by Dr. I. Ahmad, an orthopedic specialist, who diagnosed her with a spinal sprain and myositis. R. at 82.

evaluation under the sequential evaluation process for finding [Ms. Bordes] not disabled prior to April 26, 1996, nor does it provide the regulatory basis for finding [her] disabled beginning April 26, 1996." R. at 89. A second hearing before the ALJ was scheduled for August 19, 2004. R. at 93.

Mr. Solow appeared at the hearing held on August 19, 2004. He informed the ALJ that his office had mistakenly sent the request for review of the ALJ's August 23, 1999 decision to the Appeals Council. R. at 46. He admitted at the August 19, 2004 hearing that it was the first time he had raised the issue of his office's mistaken request for appeal. R. at 46-47. He declined to add any evidence to the record. R. at 47.

On August 27, 2004, the ALJ issued a decision finding that Ms. Bordes had never been disabled and was not entitled to benefits. R. at 14-18. The ALJ reasoned that Ms. Bordes did not have a severe impairment, as required to support a finding of disability, because "the medical evidence present on or before December 31, 1998 [the last date she was insured for disability insurance purposes] fails to establish the presence of any impairment that resulted in any significant restrictions or limitations of [her] ability to perform basic work-related activities." R. at 17.

On September 23, 2004, Freeman & Bass sent a computer-typed letter to the Appeals Council requesting review of the ALJ's August 27, 2004 decision. R. at 250-51. The letter did not argue that Freeman & Bass had mistakenly requested Appeals Council

5

review of the ALJ's August 23, 1999 decision. Instead, it argued that the ALJ's August 27, 2004 decision failed to evaluate the credibility of Ms. Bordes's statements, and placed too heavy of a burden on Ms. Bordes to demonstrate a severe impairment. *Id.* The letter was signed:

> Respectfully yours,
>
> FREEMAN & BASS, P.A.
>
> BY: JOEL M. SOLOW.

Mr. Solow's signature appeared above his typed name. R. at 251. The Appeals Council denied the request for review on November 5, 2004, and the ALJ's August 27, 2004 decision became the final decision of the Commissioner. R. at 5-7.

Ms. Bordes appealed from the August 27, 2004 decision to the District Court. On March 9, 2006, the District Court issued an opinion reversing the ALJ's decision and remanding it for further findings. Appx. at 1. The District Court reasoned that, although substantial evidence supported the ALJ's determination that Ms. Bordes did not have a severe back, shoulder, or leg impairment, the ALJ had failed to address evidence in the record supporting Ms. Bordes's complaints of stiffness in her hands, blurred vision, shortness of breath, anxiety, and depression. Appx. at 14-15. The District Court further determined that the ALJ had improperly failed to evaluate the credibility of Ms. Bordes's subjective complaints. Appx. at 15. It instructed the ALJ "[o]n remand . . . [to] address

6

Plaintiff's subjective complaints in addition to the medical evidence regarding her various impairments."  Appx. at 16.  Ms. Bordes filed a timely notice of appeal.

The District Court had subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[5] This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## II

### A

Ms. Bordes contends that the Appeals Council followed fundamentally unfair procedures, and thus violated her due process rights, by initiating review of the ALJ's August 23, 1999 decision based on an unsigned request for appeal, taking more than sixty days to initiate its review, and not notifying her in advance of its intent to undertake the review.  She contends that the Appeals Council's conduct violated various provisions of two SSA internal procedure manuals, the Program Operations Manual System ("POMS")[6]

---

[5] 42 U.S.C. § 405(g) provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain [judicial] review of such decision by a civil action . . . .  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides
> . . . .

[6] "The POMS is a primary source of information used by Social Security employees to process claims for Social Security benefits."  SSA's Program Operations Manual System, https://s044a90.ssa.gov/apps10/poms.nsf/aboutpoms.  *See also*

7

and Hearings, Appeals and Litigation Law Manual ("HALLEX"),[7] as well as the Code of

Federal Regulations. The Commissioner responds that those provisions are inapplicable

to this case, and that it was Ms. Bordes's practice to communicate with the Commissioner

via unsigned, computer-generated documents. This Court exercises plenary review over

the legal issue of whether the SSA's conduct violated fundamental fairness. *Allen v.*

*Barnhart*, 417 F.3d 396, 398 (3d Cir. 2005).

"[D]ue process requires that any hearing afforded [a Social Security disability]

claimant be full and fair." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). This

standard is violated where a claimant is deprived of the opportunity to present evidence to

an ALJ in support of his or her claim, or where the ALJ exhibits bias or animus against

the claimant. *Ventura*, 55 F.3d at 902-03 (claimant was denied a fair hearing where the

ALJ acted abusive and intimidating, and interfered with the claimant's presentation of

*Washington State Dept. of Soc. and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003). Although POMS is intended for SSA employees, a publicly available version is posted on the World Wide Web.

[7]"Through HALLEX, the Associate Commissioner of Hearings and Appeals conveys guiding principles, procedural guidance and information to the Office of Hearings and Appeals ("OHA") staff. HALLEX includes policy statements resulting from an Appeals Council *en banc* meeting under the authority of the Appeals Council Chair. It also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council, and Civil Action levels." HALLEX § I-1-0-1, Purpose, http://www.socialsecurity.gov/OP_Home/hallex/I-01/I-1-0-1.html. HALLEX provisions are available at http://www.ssa.gov/OP_Home/hallex/.

evidence supporting his claim); *Hess v. Sec. of Health, Educ. and Welfare*, 497 F.2d 837, 841 (3d Cir. 1974) (*pro se* claimant was deprived of a full and fair hearing where the ALJ failed to secure readily obtainable evidence to resolve doubts about his right to disability benefits).  As Ms. Bordes relies only on the fundamental fairness standard set forth in *Ventura*, we need not address whether the Appeals Council's actions violated due process under any other theory.

1

Ms. Bordes contends that "[t]he computer generated document [sent by Freeman & Bass on September 1, 1999, requesting review of the ALJ's August 23, 1999 decision] is unsigned, and, as such cannot be considered as an actual request for review."  Appellant Br. 13.  "Fundamental fairness," she argues, "would dictate that a document must be signed in order to justify legal action thereon."  *Id.*  In support of this contention, she relies on POMS section GN 00204.010(B)(2),[8] which provides in relevant part:

> **Written Statement Must Be Signed**
> A written statement of intent to file must be signed or initialed (this includes typed signatures and initials) by the claimant or otherwise proper applicant, or a SSA employee to establish the protective filing date.

---

[8]Ms. Bordes's actually cites POMS "section GN 00204.1010."  Appellant Br. 13. That section does not appear in the POMS, and apparently does not exist.  Ms. Bordes's brief refers to a printout of a POMS section set forth in her appendix, which is POMS section GN 00204.010.  Apparently, her reference to "GN 00204.1010" is a typographical error.

9

Section GN 00204.010(B)(2) is unavailing to Ms. Bordes, because it applies to written statements of intent to file for benefits, rather than to requests for Appeals Council review.

Other POMS provisions not cited by Ms. Bordes, however, do appear to require signatures on requests for Appeals Council review. POMS section GN 03104.200, entitled "Preparation of Form HA-520-U5 (Request for Review of Hearing Decision/Order)," instructs SSA employees to "[r]emember that a request for review or appeal can be anything in writing *over the claimant's signature or that of his/her appointed representative*." POMS § GN 03104.200(B)(5), https://s044a90.ssa.gov/apps10/poms.nsf/lnx/0203104200!opendocument (emphasis added). POMS section GN 0201.010(B)(d), states in relevant part that "[g]enerally . . . SSA requires claimant and/or third party signatures in the following situations . . . . Requests for appeal of an Agency decision; . . ." https://s044a90.ssa.gov/apps10/poms.nsf/lnx/0200201010!opendocument.

To similar effect is the HALLEX. Although the HALLEX contains no express signature requirement, it does require that a request for Appeals Council Review be filed by "a claimant or representative." HALLEX § I-3-3-1. HALLEX § I-1-1-10 provides that "[a] claimant may not appoint as his or [sic] representative a . . . law firm, but instead must specify a person or persons within the organization as the representative."

10

HALLEX § I-1-1-10, Note 2, http://www.ssa.gov/OP_Home/hallex/I-01/I-1-1-10.html.

Ms. Bordes's appointed representative in this case was Joel M. Solow. R. at 19. Neither Ms. Bordes nor Mr. Solow signed the September 1, 1999 letter requesting Appeals Council review, nor do their names appear on the letter. R. at 87. Although Freeman & Bass, which is listed on the letter, is also listed on Ms. Bordes's form designating a representative, HALLEX states that a law firm may not serve as a claimant's personal representative. HALLEX § I-1-1-10 Note 2. The letter thus did not comply with the signature requirement of POMS sections GN 03104.200(B)(5) or GN 0201.010(B), or the HALLEX's requirement that a request for review be submitted by a claimant or representative individual.

These POMS and HALLEX provisions do not aid Ms. Bordes, however, because they lack the force of law and create no judicially-enforceable rights. *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (Social Security Administration Claims Manual "has no legal force, and . . . does not bind the SSA"); *Binder & Binder PC v. Barnhart*, - - - F.3d - - - , 2007 WL 901808, at *10 (2d Cir. March 27, 2007) (Even if SSA Program Circular were part of the POMS, "it still would not constitute properly enacted policy or have the force of law."); *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (stating that "neither [POMS nor HALLEX] imposes judicially enforceable duties"); *Tejada v. Apfel*, 167 F.3d 770, 775 (2d Cir. 1999) ("[T]he POMS guidelines 'ha[ve] no legal force,

11

and [they] do[] not bind the [Commissioner].") (alterations in original); (citing *Schweiker*, 450 U.S. at 789). *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996) (POMS "regulations do not have the force of law."). *See also* SSA's Program Operations Manual System, Disclaimer, https://s044a90.ssa.gov/apps10/poms.nsf/aboutpoms (last visited April 12, 2007) (stating, "[t]he POMS states only internal SSA guidance. It is not intended to, does not, and may not be relied upon to create any rights enforceable at law by any party in a civil or criminal action.").

The Fifth Circuit has taken a more stringent approach. In *Newton v. Apfel*, 209 F.3d 448, (5th Cir. 2000), the Fifth Circuit addressed an asserted violation of HALLEX and stated that, "[w]hile HALLEX does not carry the authority of law, this court has held that 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.'" *Id.* at 459 (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). "If prejudice results from a violation," the Fifth Circuit stated, "the result cannot stand." *Id.* The Fifth Circuit held in *Newton* that it could not grant the claimant relief based on the Appeals Council's violation of HALLEX, because the violation did not prejudice the claimant. *Id.* at 459-60. *Cf. Schweiker*, 450 U.S. at 789 (SSA field representative's failure to follow a procedure set forth in an internal agency manual did not estop the SSA from enforcing its written application requirement, where the representative's "conduct

12

did not cause respondent to take action, or fail to take action, that respondent could not correct at any time.") (internal citations omitted).

Ms. Bordes's fundamental fairness claim would fail even under the Fifth Circuit's approach, because she has not shown she was prejudiced by the Appeals Council's review of her claim based on the unsigned request for review. Even if Ms. Bordes had sent no notice of appeal at all, the Appeals Council still could have initiated review of her claim "on its own motion." HALLEX § I-3-3-1. Moreover, Ms. Bordes and Mr. Solow failed to avail themselves of opportunities to withdraw or disclaim the request for review. POMS section GN 3104.100(B)(5) provides that "[t]he [Appeals Council] may dismiss a request for review at the request of the claimant or his or her representative." Neither Ms. Bordes nor Mr. Solow ever attempted to obtain dismissal of the September 1, 1999 request during the three and one-half years before the Appeals Council issued its reversal. At no time before the August 19, 2004 post-remand hearing did Mr. Solow raise his contention that his office mistakenly sent the request. Mr. Solow did not even mention the alleged mistake in a July 19, 2004 letter he sent to the ALJ regarding the post-remand hearing, or in his September 23, 2004 letter requesting Appeals Council review of the ALJ's August 27, 2004 decision. On these facts, no prejudice has been shown.

**2**

Ms. Bordes further contends that it was fundamentally unfair for the Appeals

13

Council to initiate review of the ALJ's August 23, 1999 decision more than sixty days after the decision was rendered. She argues that 20 C.F.R. § 404.969(a) sets a sixty-day time limit for Appeals Council review, and that the Appeals Council in this case waited three and one-half years to render its decision. The Commissioner argues that § 404.969(a) is inapplicable to this case because it applies only where the Appeals Council initiates review on its own motion.

The Commissioner is correct. Section 404.969(a) expressly applies where the Appeals Council "decide[s] on its own motion to review the action that was taken in [the claimant's] case." 20 C.F.R. § 404.969(a). Here, the Appeals Council initiated review not on its own motion but based on Freeman & Bass' September 1, 1999 letter. R. at 89. As "[n]o mandatory deadlines apply to claimant-initiated requests [for appeal]," *Williams v. Sullivan*, 970 F.2d 1178, 1183 (3d Cir. 1992), the Appeals Council did not violate any review deadline.

Ms. Bordes also argues that the Appeals Council's three-and-a-half-year delay constituted laches. Even assuming a fundamental fairness violation could be made out on that theory, however, Ms. Bordes has failed to demonstrate the required elements of laches: inexcusable delay and prejudice to herself. *Burke v. Gateway Clipper, Inc.*, 441 F.2d 946, 949 (3d Cir. 1971) (citing *Loverich v. Warner Co.*, 118 F.2d 690 (3d Cir. 1941), *cert denied*, 313 U.S. 577). "These elements are conjunctive, and since laches is a

14

defense, the burden of establishing both is on the defendant. If a statutory limitations period that would bar legal relief has expired, then the defendant in an action for equitable relief enjoys the benefit of a presumption of inexcusable delay and prejudice. In that case, the burden shifts to the plaintiff to justify its delay and negate prejudice." *EEOC v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984), *cert. dismissed*, 469 U.S. 925 (1984) (citations omitted). As no statute of limitations applied to the Appeals Council's action in this case, *Williams*, 970 F.2d at 1183, the burden of proving laches rested with Ms. Bordes. She has not met that burden.

**3**

Ms. Bordes also asserts that the Appeals Council acted unfairly by failing to notify her that it intended to review the ALJ's August 23, 1999 decision. In support of this argument, she relies on 20 C.F.R. § 404.969(d), which provides: "Appeals Council's action. If the Appeals Council decides to review a decision or dismissal on its own motion, it will mail a notice of review to all the parties as provided in § 404.973." She also cites HALLEX I-3-6-51(A), which provides in relevant part that "[w]hen the Appeals Council reviews an ALJ's action on its own motion, procedural due process requires that the Council give the claimant and representative, if any, notice of the review . . . ." Appellant Br. 14. As the Government correctly argues, these provisions are inapposite because they apply only where the Appeals Council initiates review on its own

15

motion.[9]

In sum, the District Court did not err by concluding that it was not a violation of fundamental fairness for the Appeals Council to review Ms. Bordes's case, based on the September 1, 1999 letter requesting review of the ALJ's August 23, 1999 decision, without notifying her in advance.

**B**

Ms. Bordes further argues that "the Appeals Council was without substantial evidence in reversing the favorable decision issued by the ALJ on August 23, 1999." Appellant Br. 17. She contends that the Appeals Council ignored residual functional capacity evaluations by her treating physician, Dr. H. Maker, and a consultative physician, Dr. L. Vassalo. Those evaluations, Ms. Bordes contends, "clearly demonstrate that she has impairments which significantly limit her ability to do basic work activities"

---

[9]Even if the prior notice provisions did apply in this case, Ms. Bordes has not shown she was prejudiced by the Appeals Council's failure to notify her. She argues that "[a]bsent the issuance of a prior notice [from the Appeals Council] before taking its action on February 14, 2003, [she] was not in a position to advance her contentions that a signed request for review was never issued and that the action proposed was not based on substantial evidence." Appellant Br. 15. However, the Appeals Council still could have reviewed the ALJ's August 23, 1999 decision on its own motion, even if Ms. Bordes had argued to it that the request for review was unsigned. Moreover, Ms. Bordes declined on remand to add any evidence to the record to support her claim of disability. R. at 47. She does not argue that she would have added any evidence to the record had the Appeals Council given her advance notice of its intent to review the ALJ's August 23, 1999 decision.

such as sit, stand, and walk. Appellant Br. 18-19. The Commissioner concedes that "the ALJ inadequately considered [Ms.] Bordes's subjective complaints," Appellee Br. 30, but argues that the ALJ's decision was otherwise supported by substantial evidence.

In reviewing a district court decision evaluating a final decision of the Commissioner, "[w]e exercise plenary review over the order of the district court, but review the decision of the Commissioner to determine whether it is supported by substantial evidence." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003) (internal citation omitted); 42 U.S.C. § 405(g).[10] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Id.* (quoting *Ginsberg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). The Commissioner's decision will only be supported by substantial evidence if "the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979)). "The ALJ must consider all the evidence and

---

[10] 42 U.S.C. § 405(g) provides, "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."

give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

## 1

Although Ms. Bordes frames her argument by reference to the Appeals Council's February 14, 2003 decision reversing the ALJ's August 23, 1999 decision, we must instead focus our review on the ALJ's August 27, 2004 decision, which became final when the Appeals Council denied review on November 5, 2004. *See* 42 U.S.C. § 405(g) (permitting judicial review of "any final decision of the Commissioner"); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for [Appeals Council] review is denied, is binding unless you or another party file an action in Federal district court . . . .'"); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007) ("Because the Appeals Council denied review of the ALJ's decision, we review that decision as the final decision of the Commissioner."). The ALJ's August 27, 2004 decision rests on the same evidentiary record as the Appeals Council's February 2003 reversal decision on which Ms. Bordes focuses on in her brief. Ms. Bordes's arguments are therefore equally applicable to both, and will be discussed hereinafter as if they reference the August 27, 2004 decision.

## 2

"[T]o establish a disability under the Social Security Act, a claimant must

18

demonstrate that there is some 'medically determinable basis for an impairment that prevents him from engaging in any "substantial gainful activity" for a statutory twelve-month period.'" *Newell*, 347 F.3d at 545 (quoting *Stunkard v. Sec. of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988)). *See also* 42 U.S.C. § 423(d)(1)(A). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Newell*, 347 F.3d at 545 (quoting 42 U.S.C. § 423(d)(2)(A)).

SSA regulations set forth a sequential five-step evaluation process for determining whether a claimant is disabled. *Id.*; 20 C.F.R. § 404.1520(a)(4). First, the ALJ "must determine whether the claimant currently is engaging in substantial gainful activity." If the claimant is, he will be found not disabled. *Newell*, 347 F.3d at 545. If not, at step two the ALJ determines "whether the claimant has a medically severe impairment or combination of impairments." *Id.* If not, the disability claim will be denied. *Id.* If so, at step three the ALJ must "compare [] the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work." *Id.* If the claimant's impairment meets or equals a listed impairment, the disability claim will be granted without any further analysis. *Id.* at 545-46; 20 C.F.R. § 404.1520(a)(4)(iii). If

19

the claimant's impairment does not meet or equal a listed impairment, at step four the ALJ assesses the claimant's residual functional capacity, or ability to return to his past relevant work. *Newell*, 347 F.3d at 546. The claimant bears the burden to show inability to return to past work. *Id.* If the claimant fails to meet this burden, the claim will be denied. *Id.* If the claimant shows he is unable to return to his past work, the burden of production shifts to the Commissioner, and "the Commissioner must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform," given "his or her medical impairments, age, education, past work experience, and residual functional capacity." *Id.*

The ALJ's August 27, 2004 decision denied Ms. Bordes's claim at step two, and found that she did not have a medically severe impairment or combination of impairments. Under the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). *See also* 20 C.F.R. § 404.1520(c). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.'" *Newell*, 347 F.3d at 546 (quoting *Smolen*, 80 F.3d at 1273). *See also* 20 C.F.R. § 404.1521(b).

"The step-two inquiry is a *de minimis* screening device to dispose of groundless

claims." *Newell*, 347 F.3d at 546. Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Id.* "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Id.* at 546-47. (*citing Smolen*, 80 F.3d at 1290). Reasonable doubts at the step two stage must be resolved in favor of the claimant. *Id.* at 547.

### 3

Ms. Bordes contends that the ALJ's August 27, 2004 decision was unsupported by substantial evidence, and that the ALJ improperly disregarded evaluations by her treating physician, Dr. H. Maker, and Dr. L. Vassallo, who examined her on behalf of the SSA. Appellant Br. 19. The Commissioner argues that the ALJ properly disregarded the Maker and Vassallo evaluations because they were contradicted by objective medical evidence in the record, and that other evidence in the record supported a finding of no severe impairment. The Commissioner is incorrect.

The Maker evaluation is dated May 27, 1999. It concluded, apparently based on a March 10, 1999 MRI report, that Ms. Bordes had a herniated disc at C5-A1, and lumbosacral radiculopathy. R. at 217-18. The March 10, 1999 MRI report states, under

21

the heading, "Impressions:" "[w]ater loss phenomenon at L5-S1 with a minimum convex posterior margin to the disc on both sagittal and axial images either representing a prominent disc bulge or a small smooth subligamentous HNP.  Considering the minimum findings a prominent disc bulge is favored."  R. at 213.   Also under "Impressions," the MRI report lists  "Schmorl's node and degenerative change at L3-4 with associated disc bulge at the level of L3-4 most prominent on sagittal images with minimal findings on axial images."  R. at 212.

The record contains evidence that contradicts Dr. Maker's diagnosis, as well as evidence that supports it.  A May 3, 1999 x-ray report states, contrary to Dr. Maker's evaluation, that Ms. Bordes has a "normal lumbosacral spine."  R. at 245.  Dr. Maker's diagnosis of lumbosacral radiculopathy, however, is supported by outpatient notes from the Bergen Medical Center, dated March 15, 1999, that identify "LS Radiculopathy."  R. at 229.

The ALJ's decision fails to mention either the May 3, 1999 x-ray report or the March 15, 1999 outpatient note in connection with Dr. Maker's diagnosis.   Instead, the ALJ  rejected Dr. Maker's diagnosis as "not supported by the record,"  as follows:

> While [Dr. Maker's] report appears to be based on the March 1999 MRI, an outpatient note dated March 19, 1999[11] states

---

[11]The ALJ's mention of the "outpatient note dated March 19, 1999" appears actually to refer to the March 15, 1999 note.  The note reports both a "min. bulge disc

22

that the MRI did not show a herniated disc, but only "small bulging disc at L5-S1." It was also stated that the claimant did have "some relief" from anti-inflammatory medication. Furthermore, although the claimant was advised to go for physical therapy, there was no evidence that she ever went.

R. at 17.

An "ALJ must . . . pay close attention to the medical findings of a treating physician," *Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986), and "may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988), and *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)). "[The reviewing court] need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

By failing to indicate whether he considered or rejected the March 15, 1999 outpatient note indicating "LS Radiculopathy," or the May 3, 1999 x-ray report, the ALJ violated his duty to "consider all the evidence and give some reason for discounting the

L5S1" and "LS Radiculopathy." R. at 229.

23

evidence [he or] she rejects." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). The ALJ completely failed to explain his rejection of Dr. Maker's conclusion that Ms. Bordes suffered from lumbosacral radiculopathy, to state whether he rejected that conclusion based on the May 3, 1999 x-ray report, or to address the outpatient note that supported Dr. Maker's diagnosis. The ALJ appears, instead, to have rejected Dr. Maker's lumbosacral radiculopathy diagnosis based on the ALJ's own speculation that Ms. Bordes's condition could not have been too dire if she experienced "'some relief' from anti-inflammatory medication" and failed to go to physical therapy when advised to do so. "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject a 'treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation, or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent*, 710 F.2d at 115). The ALJ's conclusions regarding Ms. Bordes's response to medication and her failure to go to physical therapy appear to be his own speculation and lay opinion.

The ALJ also failed to address Dr. Vassallo's diagnosis. Dr. Vassallo concluded, in a report dated May 3, 1999, that Ms. Bordes "ha[d] a left side sciatic syndrome, [and] diminished motion of the lumbar spine due to probable degenerative disc disease without neurological changes." R. at 243. He further determined that she was restricted to lifting

24

and carrying up to ten pounds "occasionally," that she could sit and walk for three hours total in an eight-hour workday and stand for two hours total in an eight-hour workday, and that she could sit, stand, or walk for only one hour at a time without interruption. R. at 246-47. While it is possible that the May 3, 1999 x-ray report of a "normal lumbosacral spine" contradicts Dr. Vassallo's conclusions, that result is not obvious from the record: Dr. Vassallo's diagnosis of a left side sciatic syndrome and degenerative disc disease may instead be consistent with a "normal lumbosacral spine." Without an explanation from the ALJ, it is impossible to tell.

Because the ALJ failed to address evidence corroborating Dr. Maker's diagnosis of lumbosacral radiculopathy, explain whether it relied on the May 3, 1999 x-ray report in rejecting Dr. Maker's diagnosis, or address Dr. Vassallo's report, the ALJ's finding that Ms. Bordes suffered from no severe back impairment is not supported by substantial evidence. To the extent the District Court held otherwise, the District Court erred.

As the District Court correctly concluded, the ALJ also failed adequately to address evidence pertaining to Ms. Bordes's complaints of stiffness in her hands, blurred vision, shortness of breath, and anxiety and depression. The ALJ referred vaguely in its decision to "multiple impairments," but failed to address either Ms. Bordes's subjective complaints or medical evidence in the record that corroborated those complaints. The undiscussed evidence includes:

25

- a June 20, 1996 report from Dr. Malcolm H. Hermele diagnosing Ms. Bordes with "chronic bronchitis" and stating, "I would estimate a permanent pulmonary disability of 25% of total." R. at 180.

- an October 23, 1996 report by Dr. Herbert L. Glatt diagnosing Ms. Bordes with "a partial permanent disability of 20% of the right eye and 25% of the left eye." R. at 183.

- an April 24, 1996 report by Dr. Samuel L. Pollock, diagnosing Ms. Bordes with "permanent neuropsychiatric disability [of] 35 % of partial total." R. at 186.

Depending on the ALJ's interpretation, the record in this case may be sufficient to show a medically severe impairment or combination of impairments. "An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence." *Rutherford*, 399 F.3d at 552 (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)(per curiam)). By not addressing evidence in the record regarding Ms. Bordes's hand, vision, respiratory, and emotional complaints, the ALJ failed its duty to "analyze[] all evidence and . . . sufficiently explain[] the weight he has given to obviously probative exhibits." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec. of HEW*, 567 F.2d 258, 259 (4th Cir. 1977)).

In sum, the ALJ's decision was unsupported by substantial evidence because the ALJ failed to discuss evidence supporting and contradicting Dr. Maker's diagnosis, failed to mention Dr. Vassallo's report, and failed to address Ms. Bordes's subjective complaints or medical evidence substantiating those complaints.

26

## C

Ms. Bordes argues that the District Court abused its discretion by remanding the case to the Commissioner for further findings, instead of reversing and directing an award of benefits. She contends that benefits should have been awarded because the Maker and Vassallo reports "clearly demonstrate that [she] has impairments which significantly limit her ability to do basic work activities." Appellant Br. 18-19. The Commissioner argues that "the evidence in this case does not warrant reversal for the payment of benefits" and that "remand is appropriate to evaluate and make a finding regarding the credibility of Bordes's complaints of pain." Appellee Br. at 30.

"A district court, after reviewing the decision of the Commissioner may under 42 U.S.C. § 405(g) affirm, modify, or reverse the Commissioner's decision with or without a remand to the Commissioner for a rehearing." *Newell*, 347 F.3d at 549 (citing *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). "A court of appeals also retains this discretion and, in reversing or modifying the Commissioner's decision, may choose to direct a remand of the case to the Commissioner for a further hearing or simply direct the district court to order the award of benefits." *Id.* However, "a court of appeals should make the decision to direct the district court to order the award of benefits only when the administrative record of the case has been developed fully and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits."

27

*Id. See also Poulos*, 474 F.3d at 95 ("Because the record is not fully developed, we will remand this case for further proceedings . . . .").

The record in this case has not been fully developed. The ALJ denied Ms. Bordes's claim at step two of the five-step sequential evaluation process, without proceeding to the other steps. It also failed to consider pertinent evidence relating to Ms. Bordes's back and other asserted impairments, or to address her subjective complaints. Consequently, the District Court did not abuse its discretion by remanding the case to the ALJ for further proceedings.

## Conclusion

The District Court correctly determined that the Appeals Council did not violate fundamental fairness by reviewing the ALJ's August 23, 1999 decision based on an unsigned, computer-typed letter from the law firm that represented Ms. Bordes, by taking more than sixty days to initiate its review, or by not giving Ms. Bordes advance notice of its intent to initiate review. Although the District Court erred in concluding that substantial evidence supported the ALJ's determination that Ms. Bordes had no severe back impairment, the District Court correctly concluded that the ALJ's August 27, 2004 decision was unsupported by substantial evidence. Because the administrative record is not fully developed, the District Court properly vacated and remanded the ALJ's decision for further proceedings. Because our decision rests on grounds different from those relied

28

on by the District Court, we will vacate the District Court's decision and remand to the

ALJ for further proceedings consistent with this opinion.