# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SOCIAL SECURITY ADMINISTRATION, | DOCKET NUMBER CB-7521-14-0014-T-1 |
| Petitioner, | |
| v. | DATE: August 25, 2016 |
| LARRY J. BUTLER, | |
| Respondent. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Jessica V. Johnson</u>, Esquire, and <u>Megan E. Gideon</u>, Esquire, Atlanta, Georgia, for the petitioner.

<u>Meeka S. Drayton</u>, Esquire, Seattle, Washington, for the petitioner.

<u>Danielle Gifford</u>, Esquire, <u>Peter H. Noone</u>, Esquire, and <u>Robert J. Fedder</u>, Esquire, Belmont, Massachusetts, for the respondent.

<u>Thomas W. Snook</u>, Esquire, Miami, Florida, for amicus curiae, Association of Administrative Law Judges.

<u>Eugene F. Chay</u>, Esquire, Washington, D.C., for amicus curiae, Asian Americans Advancing Justice / Asian American Justice Center.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## REMAND ORDER

¶1    The Social Security Administration (SSA) has filed a petition for review, and the respondent administrative law judge (ALJ) has filed a cross petition for review of the initial decision, which found good cause under 5 U.S.C. § 7521 to issue a warning, counseling, or reprimand.  For the reasons discussed below, we GRANT the petition for review and the cross petition for review.  We FIND that SSA proved the failure to follow instructions and failure to follow agency policy charges and specifications.  We FURTHER FIND that the respondent proved by preponderant evidence that his disclosures were a contributing factor in SSA's decision to file a complaint under 5 U.S.C. § 7521, and we REMAND this claim to the ALJ for further adjudication in accordance with this Order.

## BACKGROUND

¶2    The relevant facts are largely undisputed.  The respondent is employed by the SSA as an ALJ in Fort Myers, Florida.  Initial Appeal File (IAF), Tab 65 at 8; Hearing Transcript (HT) at 401.  SSA has a policy for providing services to persons with limited English proficiency.  As set forth in SSA's Hearings, Appeals, and Litigation Manual (HALLEX) I-2-6-10, this policy directs all SSA ALJs to grant interpreters to any SSA claimant making such a request.  IAF, Tab 72 at 5-6.  The respondent was aware of this policy at all relevant times.  *E.g.*, IAF, Tab 65 at 8; HT at 415.

¶3    SSA filed a complaint under 5 U.S.C. § 7521, which proposed to suspend the respondent for 60 days based on charges of failure to follow instructions, failure to follow SSA policy, and conduct unbecoming an ALJ.  IAF, Tab 1.  The respondent filed an answer, in which he asserted 24 affirmative defenses, including a claim of reprisal for whistleblowing activity.  IAF, Tab 15.

¶4    A hearing was held.  The adjudicating ALJ issued an initial decision in which he sustained specification 2 and a portion of specification 3 of the failure to follow instructions charge, but he did not sustain any of the other

specifications or charges. IAF, Tab 109, Initial Decision (ID) at 17-42. The ALJ also determined that the respondent did not prove any of his affirmative defenses. ID at 42-53. The ALJ concluded that SSA did not prove good cause to suspend the respondent for 60 days, but it was not precluded from issuing a warning, counseling, or reprimand. ID at 66‑67.

¶5 SSA has filed a petition for review, the respondent has filed a cross petition for review, and the parties have filed responses and reply briefs. Petition for Review (PFR) File, Tabs 3, 13, 16-17, 23. The Association of Administrative Law Judges and the Asian Americans Advancing Justice / Asian American Justice Center have filed amicus briefs, and SSA and the respondent have responded to these briefs. PFR File, Tabs 22, 24-25, 28‑29.

## ANALYSIS

### Standard of Review

¶6 The Board has jurisdiction to adjudicate actions against ALJs. An agency may take an action against an ALJ only for "good cause" as determined after a hearing by the Board. 5 U.S.C. § 7521(a). SSA must prove good cause by preponderant evidence. *Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 12 (2010), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011). Congress has not defined the term "good cause" for purposes of section 7521. The Board has adopted a flexible approach in which good cause is defined according to the individual circumstances of each case. *Department of Labor v. Avery*, 120 M.S.P.R. 150, ¶ 5 (2013), *aff'd sub nom. Berlin v. Department of Labor*, 772 F.3d 890 (Fed. Cir. 2014). However, the baseline for evaluating good cause in any action against an ALJ is whether the action improperly interferes with the ALJ's ability to function as an independent and impartial decision maker. *Id*. (citing *Brennan v. Department of Health and Human Services*, 787 F.2d 1559, 1563 (Fed. Cir. 1986); *Social Security Administration v. Mills*, 73 M.S.P.R. 463, 468 (1996), *aff'd*, 124 F.3d 228 (Fed. Cir. 1997) (Table)).

<u>SSA proved by preponderant evidence the failure to follow instructions and failure to follow agency policy charges and specifications.</u>

¶7 In the failure to follow instructions charge, SSA made the following assertions: (1) the respondent failed to comply with Hearing Office Chief ALJ (HOCALJ) Rossana D'Alessio's October 31, 2013 directive to rescind his previous denials of claimant A.'s interpreter requests; (2) he failed to comply with her November 13, 2013 directive to complete his review of seven cases in Pre-Hearing Review status by the close of business on November 22, 2013; and (3) he failed to comply with her February 7, 2014 directive to rescind his previous denials of the interpreter requests in the matters involving claimants B., C., and D. IAF, Tab 1 at 10; *see* IAF, Tab 87 at 17-18, Tab 88 at 16-17, Tab 91 at 24-25. SSA asserted that the respondent failed to comply with agency policy when he did not provide an interpreter in claimant E.'s case, despite claimant E.'s repeated requests for an interpreter. IAF, Tab 10 at 1. SSA also alleged that the respondent engaged in conduct unbecoming an ALJ when he sent or directed staff to send copies of his objections concerning management's reassigning three cases to the claimants and their representatives in those matters. *Id.*

¶8 In the initial decision, the ALJ who adjudicated this case only sustained specification 2 and the portion of specification 3 relating to claimant C. in the failure to follow instructions charge. ID at 31-39. The ALJ did not sustain the conduct unbecoming charge. ID at 39-42. The parties do not challenge these conclusions. PFR File, Tab 3 at 4 n.1, Tab 13. We find that these conclusions are supported by the evidence, and we do not disturb them on review. *E.g.*, IAF, Tab 88 at 16-17, Tab 91 at 24-25, Tab 93 at 15-19; HT at 432, 447‑50.

¶9 The remaining specifications of the failure to follow instructions and failure to follow agency policy charges involve the respondent's failure to provide an interpreter to various claimants in accordance with HALLEX I-2-6-10 and various SSA directives. In the initial decision, the adjudicating ALJ noted that HALLEX I-2-6-10 was not subject to notice and comment rulemaking and

was not published in the Federal Register. ID at 19-22. He found that, by mandating an interpreter's presence at a hearing, HALLEX I-2-6-10 conflicts with published SSA regulations, which state that a hearing is only open to the parties and those persons that the ALJ deems "necessary and proper." ID at 23‑25. He also found that HALLEX I-2-6-10, as applied by SSA, invaded the respondent's judicial function and decisional independence. ID at 25-31. The ALJ thus concluded that any allegations of misconduct based on the respondent's failure to comply with directives regarding interpreter requests or his failure to comply with HALLEX I‑2-6-10 did not constitute good cause to impose a sanction. ID at 31.

¶10      We have considered the ALJ's analysis of the legal force and effect of HALLEX I-2-6-10, but we are not persuaded that he applied the proper framework for evaluating these charges. The cases cited by the ALJ, to support his conclusion that HALLEX is a guidance document without the force of law, arise in the context of claimant appeals against SSA. ID at 22 (citing *Lockwood v. Commissioner Social Security Administration*, 616 F.3d 1068 (9th Cir. 2010); *Bordes v. Commissioner of Social Security*, 235 F. App'x 853 (3d Cir. 2007)). By contrast, here, SSA is seeking to discipline its own employee for failing to comply with its directives and policy. IAF, Tab 1; PFR File, Tab 3 at 16-18. Under these circumstances, it is appropriate to rely on decisions of the U.S. Court of Appeals for the Federal Circuit and the Board involving similar allegations of ALJ misconduct. *See, e.g.*, *Abrams v. Social Security Administration*, 703 F.3d 538, 543 (Fed. Cir. 2012) (affirming the Board's determination that failure to follow instructions is sufficient "good cause" for removal); *Social Security Administration v. Anyel*, 58 M.S.P.R. 261, 269 n.13 (1993) (finding that ALJs are required to follow agency policies).

¶11      We recognize that the respondent, as an ALJ, has decisional independence, which ensures that he "exercises his independent judgment on the evidence before

him, free from pressures by the parties or other officials within the agency." *Brennan*, 787 F.2d at 1562 n.1 (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)). Decisional independence, however, does not prohibit "appropriate administrative supervision that is required in the court of general office management." *Brennan*, 787 F.2d at 1562. Indeed, the Board and the Federal Circuit have held that ALJs may be disciplined for failing to follow instructions unrelated to their decisional independence. *See, e.g.*, *Abrams*, 703 F.3d at 544‒46; *Social Security Administration v. Burris*, 39 M.S.P.R. 51, 55‒57 (1988); *Social Security Administration v. Manion*, 19 M.S.P.R. 298, 314‒15 (1984).

¶12    We find that SSA's directives and the policy articulated in HALLEX I‒2‒6‒10 are similarly unrelated to the respondent's decisional independence.[2] We have considered the respondent's assertion that, by requiring him to provide an interpreter to a claimant upon request, HALLEX I-2-6-10 interfered with his ability to determine if a claimant could communicate in English. PFR File, Tab 13 at 13-21; HT at 420-22.[3] This argument is not supported by the record.

_____

[2] We also disagree with the ALJ's conclusion that HALLEX I-2-6-10 conflicts with certain published SSA regulations, such as 20 C.F.R. § 404.944, which permits an ALJ to determine who is necessary and proper at a hearing. Indeed, we do not understand how an interpreter could be considered anything but necessary and proper for a claimant with possible limited English proficiency in an SSA hearing. *See, e.g.*, *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (holding that traditional notions of due process and fairness would suggest that, without an interpreter, a claimant unable to communicate in English would hardly receive a "full hearing . . . in accordance with the beneficent purposes of the [Social Security] Act") (internal citations omitted).

[3] This determination is important because it is one component of step five of the agency's five-step sequential evaluation process for determining if an adult claimant is disabled. HT at 59-61, 420-22. At step five, ALJs use medical-vocational guidelines to assess whether a claimant is disabled based on the maximum exertional level at which a claimant can work and the vocational factors of age and education, which includes the ability to communicate in English. HT at 58-61; PFR File, Tab 3 at 7 n.3; *see* 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5). It appears that the ability to communicate in English can affect the outcome in only two situations; however, in these two situations, a

In contrast to the respondent's assertions, the testimony of three other ALJs demonstrates that providing an interpreter for an SSA claimant during a hearing did not require them to find that a claimant has an "inability to communicate in English," nor did it prevent them from reviewing the record as a whole to determine whether the claimant could communicate in English. *See, e.g.*, HT at 113 ("[T]he fact of an interpreter doesn't decide any of the determinations that you need to make under the sequential evaluation process."), 261 ("If the interpreter is sitting there, all they're doing is translating. It doesn't affect anything in my hearing."), 826-27 ("[I]f someone says, I can't speak English, you're to provide the interpreter. But the judge still has in his discretion throughout the totality of the case to make a determination based on whatever evidence might be in the record as to whether [or] not that person could speak English.").

¶13    Having found no interference with the respondent's decisional independence, we now turn to the specifications and charges at issue. Regarding specification 1 of the failure to follow instructions charge, the respondent does not dispute that he knew about the directive, that both of claimant A.'s attorneys requested an interpreter, and that he denied these requests. HT at 423−25, 541-43; IAF, Tab 65 at 8, Tab 84 at 11-14, Tab 85 at 4-7. He also admitted that he did not rescind in writing his denial of claimant A.'s request for an interpreter by the deadline imposed in the directive. HT at 424-25. Accordingly, we find that SSA proved specification 1 by preponderant evidence.

¶14    Regarding specification 3, the respondent admitted that he was aware of HOCALJ D'Alessio's February 7, 2014 directive. HT at 445. He testified that he did not hold hearings in the matters involving claimants B. and A. because they were "removed" from him. *Id.* Even if we assume for the purposes of our

---

determination that a claimant cannot communicate in English could mean a 5-year difference in the award of benefits. *E.g.*, HT at 63-65, 71, 420, 423, 722.

analysis that the respondent would have held hearings with interpreters but for the reassignment of these cases, we would still conclude that he failed to comply with the directive because he did not rescind the denial of the interpreter requests by the deadline stated therein. HT at 309. Here, too, we conclude that SSA proved specification 3 by preponderant evidence.

¶15  Because the ALJ already determined that SSA proved specification 2 and the portion of specification 3 relating to claimant C., we also sustain the failure to follow instructions charge. *See Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (holding that when more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

¶16  Regarding the single specification of the failure to follow agency policy charge, the respondent admitted that claimant E. requested an interpreter prior to the hearing and "asked . . . four more times [for] supplemental hearings with an interpreter," and he denied these requests. HT at 450-51; IAF, Tab 88 at 18, Tabs 89-90, Tab 91 at 6-23. We therefore conclude that SSA proved this specification and charge by preponderant evidence.

We remand the respondent's claim of reprisal for whistleblowing activity for further adjudication.

¶17  The ALJ determined that the respondent made the following protected disclosures: (1) disclosures to Congress and agency management, starting in March 2012 and continuing throughout that year, regarding claimants' representatives concealing information and evidence, including claimants' ability to communicate in English; (2) complaints about various abuses and violations, including unnecessary costs to agency programs, decisions issued without a complete record, and failing to ensure that the evidence was reliable or valid; and (3) reports to the Office of the Inspector General that SSA's inaction in response to his complaints constituted gross mismanagement and abuse of authority. ID

at 45-46.  The parties do not challenge the ALJ's findings, and we do not disturb his conclusion in this regard.  *E.g.*, IAF, Tab 62.

¶18      The ALJ found, however, that the disclosures were not contributing factors in SSA's decision to file a complaint under 5 U.S.C. § 7521.  ID at 46-49.  The ALJ alternatively found that, even if the disclosures were contributing factors in SSA's decision to take a personnel action against him, SSA proved by clear and convincing evidence that it would have taken the same action in the absence of the protected disclosures.  ID at 49-50.  The respondent challenges both of these conclusions.  PFR File, Tab 13 at 24-27.  For the following reasons, we grant the respondent's cross petition for review and vacate these portions of the initial decision.

¶19      To prove that a disclosure was a contributing factor in a personnel action, the respondent only need demonstrate that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way.  *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 10 (2003).  The knowledge/timing test allows an employee to demonstrate that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.  *Id.*, ¶ 11; *see* 5 U.S.C. § 1221(e)(1).  Once the knowledge/timing test has been met, an administrative judge (or here, an ALJ) must find that the respondent has shown that his whistleblowing was a contributing factor in the personnel action at issue, even if, after a complete analysis of all of the evidence, a reasonable factfinder could not conclude that his whistleblowing was a contributing factor in the personnel action.  *Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 21 (2010).

¶20      The ALJ mentioned the knowledge/timing test in the initial decision.  ID at 44.  However, he did not appear to analyze this test consistent with the above

precedent. ID at 48 (finding that "agency management's actions were based on SSA's efforts to enforce its interpreter policy"). This was error. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 19 (2015).

¶21 Associate Chief ALJ (ACALJ) Kathleen Scully‑Hayes, who signed the complaint, testified that she did not know about any of the respondent's disclosures. HT at 208-12. She further testified that she received a draft complaint from the Division of Quality Services (DQS) in the Office of General Counsel, and she discussed with DQS various aspects of the complaint and proposed discipline. HT at 205-07, 241. The U.S. Supreme Court has adopted the term "cat's paw" to describe a theory explaining instances in which a particular management official, acting because of improper animus, influences an agency official who is unaware of the improper animus when implementing a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 11 (2012) (citing *Staub v. Proctor Hospital*, 562 U.S. 411 (2011)). We find that the cat's paw theory is applicable in this matter.

¶22 The record reflects that SSA management "always" has to involve DQS in matters pertaining to ALJs. HT at 817. In fact, DQS was involved in "talking points" for a June 2013 directive and a November 2013 reprimand, both of which were issued to the respondent prior to the complaint. HT at 736, 833; *see* IAF, Tab 85 at 10, Tab 93 at 20-22. Additionally, the complaint identified, among other things, the following relevant agency correspondence: (1) Chief ALJ (CALJ) Debra Bice's January 2013 memorandum, which reminded all ALJs that they are subordinate to the agency on matters of law and policy and that they must follow agency policies, including HALLEX; (2) Acting Assistant Regional Chief ALJ (AARCALJ) Michael Davenport's June 2013 directive that ordered the respondent to rehear three different matters with an interpreter; (3) Regional ALJ (RALJ) Ollie Garmon's November 2013 reprimand to the respondent based on his failure to comply with earlier directives regarding the use of interpreters; and

(4) HOCALJ D'Alessio's October 31, 2013, November 13, 2013, and February 7, 2014 directives.  IAF, Tab 1 at 5-9.

¶23      Moreover, CALJ Bice, RALJ Garmon, and HOCALJ D'Alessio each had some knowledge of the respondent's disclosures.  *See, e.g.*, HT at 90-92, 164-67, 288-89, 829-30; *see generally* IAF, Tab 62.  We find it more likely than not that these SSA officials with knowledge of the respondent's protected disclosures would have shared this information with others in DQS.  Under these circumstances, we find that the respondent has proven by preponderant evidence that knowledge of his disclosures is imputed to ACALJ Scully-Hayes under the cat's paw theory.  Thus, the knowledge component of the knowledge/timing test is satisfied.  *See, e.g.*, *Cahill v. Merit Systems Protection Board*, 821 F.3d 1370, 1374 (Fed. Cir. 2016) ("[W]hen read with an eye on likely inferences appropriate to the context, Mr. Cahill's allegations are sufficiently specific and plausible to constitute nonfrivolous assertions that at least one, and perhaps three, of the officials charged with the personnel actions at issue attended the March 2012 meeting or at least knew what Mr. Cahill disclosed there."); *Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (finding that the appellant nonfrivolously alleged that his disclosure was a contributing factor in the agency's decision to remove him based on his claim that the agency decision makers either knew of the disclosure via the Chief of Staff or were influenced by the Chief of Staff who knew of the disclosure).[4]

¶24      As discussed above, the respondent made his disclosures during the 2012‒2013 time frame, the relevant agency activity described in the complaint, including the issuance of the memorandum, reprimand, and various directives, occurred in the 2013-2014 time frame, and SSA filed its complaint in April 2014. The Board has held that a personnel action taken within approximately 1 to

---

[4] Although the holdings in *Cahill* and *Jessup* involve nonfrivolous allegations of Board jurisdiction, we find that the principles articulated therein are equally applicable under the circumstances of this matter.

2 years of the disclosures satisfies the knowledge/timing test. *Mastrullo*, 123 M.S.P.R. 110, ¶ 21; *Schnell*, 114 M.S.P.R. 83, ¶¶ 20-22; *see Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 87 (2001) (finding that the appellant's disclosures were a contributing factor in her removal when they were made approximately 21 months and then slightly over a year before the agency removed her); *cf. Salinas v. Department of the Army*, 94 M.S.P.R. 54, ¶ 10 (2003) (finding that a delay of more than 2 years was too remote to satisfy the knowledge/timing test). Under these circumstances, this time frame satisfies the timing component of the knowledge/timing test. *See Mastrullo*, 123 M.S.P.R. 110, ¶ 21 (finding that the appellant satisfied the timing component, given the ensuing agency investigation and decision to take disciplinary action against the coworker based in part on the allegations contained in his disclosures).

¶25 If, as here, the respondent has established that his protected whistleblowing disclosures were a contributing factor in personnel actions taken against him, then SSA must demonstrate by clear and convincing evidence that it would have taken the same personnel actions in the absence of such disclosures. 5 U.S.C. § 1221(e)(2). In determining whether SSA has met this burden, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). In *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012), the Federal Circuit clarified that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." The Federal Circuit further determined that "[i]t is error for the [Board] to not

evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately." *Id.*

¶26 The ALJ's clear and convincing analysis did not identify the tripartite *Carr* standard, explicitly analyze any of its elements, or evaluate all of the pertinent evidence consistent with *Whitmore*. ID at 49-50. In light of our determination that SSA proved the failure to follow instructions and failure to follow agency policy charges and specifications, the relevant evidence as a whole must be reweighed. *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 37 (2013). We find that the ALJ is in the best position to do so as he heard live testimony. *Id.* Therefore, we remand this claim to the ALJ to make findings on the *Carr* factors consistent with the court's directive in *Whitmore*. *See, e.g.*, *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 27-33 (2013).

## ORDER

¶27 We remand this matter for the ALJ to evaluate whether SSA proved by clear and convincing evidence that it would have filed a complaint under 5 U.S.C. § 7521 absent the respondent's protected disclosures consistent with *Carr* and *Whitmore*. If the ALJ determines on remand that SSA met its burden in this regard, he shall re-evaluate whether SSA has demonstrated that the proposed 60-day suspension is supported by good cause in light of the Board's finding that SSA proved the failure to follow instructions and failure to follow agency policy charges and specifications. If, however, the ALJ determines that SSA failed to meet its burden to prove that it would have filed the complaint in the absence of the respondent's protected disclosures, he shall make appropriate findings.


FOR THE BOARD: _____
                 Jennifer Everling
                 Acting Clerk of the Board
Washington, D.C.