# United States Court of Appeals for the Federal Circuit

---

**RICHARD L. ABRAMS,**
*Petitioner,*

**v.**

**SOCIAL SECURITY ADMINISTRATION,**
*Respondent.*

---

2011-3177

---

Petition for Review of the Merit Systems Protection Board in Case No. CB752108001-T-1.

---

Decided: December 28, 2012

---

PETER B. BROIDA, of Arlington, Virginia, argued for petitioner.

ELIZABETH M. HOSFORD, Senior Trial Counsel, Classification Unit, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRIAN M. SIMKIN, Assistant Director. Of counsel was ALLISON KIDD-MILLER, Trial Counsel.

DONALD J. WILLY, Association of Administrative Law Judges, of Houston, Texas, for amicus curiae Association of Administrative Law Judges.

———————

Before LOURIE, CLEVENGER, and WALLACH, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Judge Richard L. Abrams appeals from the Merit Systems Protection Board ("Board") decision upholding his removal by the Social Security Administration ("Agency") from his position as an Administrative Law Judge ("ALJ"). Because the legal challenges are meritless and substantial evidence supports the Board's findings that good cause existed to remove Judge Abrams from his position, we *affirm*.

BACKGROUND

Prior to his removal Judge Abrams had been an ALJ with the Agency since 2001 and with the Houston-Bissonnet Hearing Office of the Agency's Office of Disability Adjudication and Review since 2003. The Hearing Office Chief ALJ of the Houston-Bissonnet Office was, at all times relevant to this appeal, Judge Robert McPhail. The Hearing Office Chief

> is responsible for managing, planning, and coordinating the administration of the hearing process for the office. In addition to handling his or her own hearing docket, the [Hearing Office Chief] responds to Congressional and public inquiries, assigns cases to ALJs, gives directives to ALJs, and assumes the overall responsibility for the expeditious handling of case processing in the office.

*Soc. Sec. Admin. v. Abrams*, No. CB-7521-08-0001-T-1, at 3 (M.S.P.B. Mar. 29, 2010) ("Initial Decision").

In April 2007 the national office sent a memorandum to the regional offices entitled "Benchmarks for Quality Case Processing" ("benchmarks") providing guidelines to facilitate case processing and service delivery. J.A.125. A Collective Bargaining Agreement between the Agency and its ALJs provided that the benchmarks were "guidelines for management officials," and would not be "used as a source of any disciplinary or performance action." J.A.192. Later that year a nationwide initiative began to move cases through the process more quickly, with a particular focus on completing those cases that were more than 900 days old.

Judge Abrams had frequently come to the attention of management due to his difficulty in processing cases in a timely manner. Efforts to address this included entering into an agreement to exchange his older cases for newer cases, not assigning new cases or giving him so called "thin" cases, offering him docket management training, and offering to have his aged cases reassigned; the latter two he refused.

In February 2007, Regional Chief ALJ Joan Parks Saunders sent Judge Abrams a memorandum directing him to decide cases that had been in post hearing status.[1]

---

[1] When a case is assigned to an ALJ it is in "ARPR" status (ALJ Prehearing Review); upon reviewing a case, the ALJ will typically place it into "RTS" status (ready-to-schedule for a hearing), unless it requires additional evidentiary development in which case it is placed in "PRE" (pre-hearing development) status. An administrative employee will schedule RTS cases for hearing. After a hearing the ALJ typically will issue decision instructions and put the case in Unassigned Writing ("UNWR") status, unless the ALJ needs more time or more informa-

For those he could not decide by March 9, 2007, he was directed to provide a detailed explanation why and what specific action he intended to take with a timeline for taking that action. In a letter dated March 8, 2007, Judge Abrams provided information concerning each of the 27 cases identified in the memorandum.

On June 14, 2007, Judge McPhail sent Judge Abrams an email with the subject line: "Direct Order—Decide Aged Cases or Provide Explanation of Your Intended Course of Action by June 22, 2007" (the "June 2007 directive"). J.A.127. Attached was a list of 53 aged cases in various statuses. For cases in all statuses Judge Abrams was directed to advance them or provide a detailed reason why he could not do so. On June 15, 2007, Judge Abrams told Judge McPhail he would be unable to comply because of his upcoming hearing schedule. Judge McPhail responded advising him that despite his hearing schedule he must still comply. Judge Abrams never responded. On August 6, Judge McPhail reassigned 11 of the 53 listed cases that were the subject of the June 2007 directive; each was more than 1,000 days old. On November 8, 2007, the Agency filed a complaint against Judge Abrams and sought a 14-day suspension for failure to follow the June 2007 directive.

On January 22, 2008, Judge McPhail again directed Judge Abrams to take action regarding 40 cases in various statuses or provide detailed explanations why he was unable to move a case forward (the "January 2008 direc-

tion in which case it is placed in the Post-Hearing status ("ALPO"). If it needs additional development a case is placed in Post-Hearing Development ("POST") status. When a decision is drafted it is moved to "EDIT" status for review or editing by the ALJ. After final changes are made it is in "SIGN" status as it awaits the ALJ's signature.

tive"). On February 5, 2008, Judge Abrams responded that he had substantially complied and expected that any remaining work he was directed to perform would be completed by February 15, 2008.

Judge McPhail again directed Judge Abrams on May 7, 2008 (the "May 2008 directive") to take action on 19 pending cases or provide a written explanation explaining why he could not do so. Judge Abrams responded that he had completed those cases that were simply awaiting his signature, made edits to those written decisions that needed his review, and returned some cases for re-assignment to other judges. However, upon examination of the case management system, Judge McPhail found otherwise. In particular, Judge McPhail found that cases had simply been shifted to different statuses, rather than moved toward adjudication, without adequate explanation. Contrary to Judge Abrams's representation, no cases were returned for reassignment nor was there any agreement in place at the time that cases would be returned and reassigned. On July 16, 2008, the Agency filed a second complaint against Judge Abrams with the Board, seeking a 30-day suspension for failure to follow instructions in the January 2008 and May 2008 directives on the grounds that contrary to Judge Abrams's responses, he had not adjudicated the cases or provided explanation as directed.

Judge McPhail issued another directive to Judge Abrams on August 19, 2008, directing him to take action on cases in need of either his signature or edits, without the option of providing a written explanation if he could not adjudicate the cases as directed (the "August 2008 directive"). For cases in other statuses he was directed to move them along in the process or explain why he could not do so. On September 9, 2008, Judge Abrams emailed Judge McPhail to inform him that he had completed all of

the tasks as directed. Contrary to Judge Abrams's assertion, the Agency determined that Judge Abrams had not moved all of his cases or provided a written explanation as directed and on November 14, 2008, filed a third complaint with the Board for continued failure to follow instructions.

The three complaints were combined, and a multi-day hearing was conducted by ALJ Margaret G. Brakebusch. In her initial decision, she determined that the Agency had proven the charge of failure to follow instructions as alleged in the three complaints by a preponderance of the evidence. Judge Brakebusch recognized the importance of an ALJ's qualified judicial independence to be free from improper interference. She nevertheless found that ALJs are not immune from supervision and may be disciplined for failure to comply with reasonable instructions as long as the instructions do not affect the ALJ's "'ability to provide full and fair hearings and to render impartial and complete decisions.'" Initial Decision at 58 (quoting *Soc. Sec. Admin. v. Boham*, 38 M.S.P.R. 540, 543 (1988)). She further found that Judge Abrams was given the opportunity to provide a written explanation as to what was needed to move cases toward adjudication but failed to fully comply with the directives and established no justification for this failure. Judge Brakebusch determined that the Agency showed good cause for disciplinary action. After reviewing the standards articulated in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), Judge Brakebusch concluded the evidence weighed in favor of removal.

The initial decision was affirmed by the full Board. Judge Abrams filed a timely appeal. We have jurisdiction pursuant to 5 U.S.C. § 7703 and 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from the Board is limited. We must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Under the substantial evidence standard, this court reverses the Board's decision only "if it is not supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Haebe v. Dep't of Justice*, 288 F.3d 1288, 1298 (Fed. Cir. 2002) (quoting *Brewer v. United States Postal Serv.*, 647 F.2d 1093, 1096 (Ct. Cl. 1981)).

Judge Abrams does not dispute that substantial evidence supports the Board's conclusion that the Agency met its burden in proving the charge of failure to follow directions; in fact, he admitted that he had not fully complied with the directives. Instead, Judge Abrams argues that the Board erred in concluding there was "good cause" for removal. Three arguments were presented to show that good cause did not exist in this case. First, Judge Abrams and amicus curiae, the Association of Administrative Law Judges ("AALJ"), argue that the Agency's charge of "failure to follow instructions" was an improper attempt to enforce the benchmarks, and thus could not constitute good cause for removal. In the alternative, Judge Abrams argues that the Board erred in finding "good cause" for discipline because performance-based misconduct actions require objective, articulated performance standards. Finally, the AALJ contends that failure to follow the directives could not have provided the basis for "good cause" removal because the directives interfered with Judge Abrams "qualified decisional inde-

pendence" in addressing "live cases." We address each argument in turn.

Under 5 U.S.C. § 7521(a) an administrative law judge cannot be removed unless "good cause [is] established and determined by the Merit Systems Protection Board." "Good cause" is not defined in this statute, nor was it defined in the Administrative Procedure Act ("APA"). *Long v. Soc. Sec. Admin*, 635 F.3d 526, 533 (Fed. Cir. 2011). "'[G]ood cause' is to be given meaning through judicial interpretation. . . ." *Brennan v. Dep't of Health & Human Servs.*, 787 F.2d 1559, 1561–62 (Fed. Cir. 1986). The Board's "interpretation of 'good cause' in section 7521 is subject to *Chevron* deference." *Long*, 635 F.3d at 534; *see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Under the two-part *Chevron* test, a court must first determine if Congress has directly addressed the issue and if so must give effect to the expressed intent of Congress. *Long*, 635 F.3d at 535. If the statute is silent or ambiguous the court must sustain an agency's reasonable construction. *Id.* Here, Congress failed to define the meaning of "good cause" in 5 U.S.C. § 7521, and therefore, we must evaluate the Board's construction. *Id.*

The Board determined that the "good cause standard must be construed as including all matters which affect the ability and fitness of the ALJ to perform the duties of office." Initial Decision at 45. In support, the Board reasoned:

> The legislative history of the APA indicates that an ALJ's fitness and ability to perform the duties of office means that: "[ALJs] must conduct themselves in accord with the requirements of this bill and with due regard for the rights of all parties as

> well as the facts, the law, and *the need for prompt and orderly dispatch of public business.*"

*Id.* (quoting H.R. Rep. No. 1980, at 269 (1946)) (emphasis added) (alteration in Board Opinion). The Board concluded that there was good cause for removal because Judge Abrams's failure to fully comply with the directives "evidence[d] . . . a neglect of his duties as an ALJ to provide 'prompt and orderly dispatch of public business.'" *Id.* at 59-60. The Board's interpretation of "good cause" is a reasonable construction of the statutory language, and is consistent with the APA. Accordingly, under *Chevron*, we defer to the Board's interpretation of "good cause" in section 7521(a) and uphold its determination that failure to follow instructions is sufficient "good cause" for removal.

### I. The Charge Is Not Premised On Benchmarks.

Judge Abrams and the AALJ argue that the benchmarks became *de facto* performance standards used against him in violation of the collective bargaining agreement. The Board determined, as a factual matter, that the Agency did not rely upon the benchmarks as *de facto* performance standards, concluding that:

> A review of the specifications at issue reflects that the Agency's proposed disciplinary actions were based upon [Judge Abrams's] failure to follow the instructions included in the directives. Additionally there is nothing in the record to support a finding that the proposed discipline was for [Judge Abrams's] failure to follow the benchmarks rather than his failure to follow the instructions in the [four] directives.

*Id.* at 62. Neither Judge Abrams nor the AALJ point to any evidence to support their assertions that the bench-

marks were used as performance standards. Judge McPhail testified that he targeted aged cases in the directives, but did not limit Judge Abrams to any of the time frames for case processing set forth in the benchmarks. He simply directed that cases not continue to languish. The Agency charged that Judge Abrams had failed to follow instructions because he failed to decide aged cases or explain why he was unable to do so in order to fully comply with the directives. The charge was not based upon the benchmarks.

## II. The Charge Is Not Performance-Based.

In the alternative, Judge Abrams contends that the Board erred in finding "good cause" for discipline because performance-based misconduct actions require objective, articulated performance standards. Appellant's Br. at 38–54 (quoting *Soc. Sec. Admin. v. Goodman*, 19 M.S.P.R. 321, 331 (1984)). However, as explained in the previous section and as demonstrated in both the complaint and the Board's decision, Judge Abrams was charged with misconduct based upon a failure to follow instructions, and not poor performance.[2]

---

[2]    At oral argument, Judge Abrams's counsel argued that *Goodman* required a misconduct charge to be based upon insubordination. *See* Oral Argument at 5:40–5:57, *available at* *http://www.cafc.uscourts.gov/oral-argument-recordings/all/abrams.html*. The argument fails for several reasons. First, this court is not bound by *Goodman*, a decision of the Board. Second, the main determination in *Goodman* was that ALJs can be charged for misconduct under 5 U.S.C. § 7521. *Goodman*, 19 M.S.P.R. at 324–32. The language in *Goodman* that Abrams references is dicta, discussing the distinction between performance-based and misconduct-based actions: "For example, a case based upon a charge that work is of unacceptable quality is a performance-based action. On the other hand, if the agency charged that the same

The charge of failure to follow instructions is a charge of misconduct and is supported by substantial evidence. For instance, with regard to the June 2007 directive, the Board found:

> Although there is no dispute that [Judge Abrams] complied with the [June 2007] directive in at least 10 of the 53 cases, I also find that there is no evidence that [Judge Abrams] complied with the directive in any way regarding a number of the aged cases listed in the directive. More importantly, in those cases where [Judge Abrams] took no action to comply with the directive, or where he acted in contradiction to the directive, he provided no written explanation why he could not comply. [Judge Abrams], in fact, provided no written response at all to the June 2007 directive. Interestingly, when he receive[d] a similar directive from [Judge] Parks Saunders in February 2007, he complied. Thus, there is no question that he fully understood what was needed for full compliance to [sic] such a directive.

Initial Decision at 51; *see also* J.A.10305–07, J.A.10348–51, J.A.10364–70 (Judge McPhail's testimony detailing Judge Abrams's noncompliance with the January 2008,

---

poor work resulted from the employee's failure to follow instructions, the case would present a misconduct charge based upon insubordination." *Id.* at 330. Last, despite Judge Brakebusch's statement that Judge Abrams's "failure to fully comply with McPhail's directives evidence[d] . . . insubordination," Initial Decision at 59, Judge Abrams was charged with misconduct for failure to follow instructions. A charge of misconduct based on a failure to follow instructions need not be based upon insubordination.

May 2008, and August 2008 directives, respectively). Accordingly, Judge Abrams's argument that the Board could not find good cause for his removal because it did not use objective performance standards is without basis.

### III. The Directives Do Not Interfere With Judicial Independence.

The AALJ argues that the charge of failure to follow instructions cannot be sustained because the instructions interfered with Judge Abrams's qualified decisional independence. Decisional independence ensures that "the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." *Brennan*, 787 F.2d at 1562 n.1 (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)). Furthermore, the APA prohibits substantive review and supervision of the quasi-judicial functions of ALJs. *Id.* at 1562. However, decisional independence does not prohibit "appropriate administrative supervision that is required in the course of general office management." *Id.*

The Board has repeatedly acknowledged that ALJs may be disciplined for failure to follow instructions unrelated to their decisional independence. *See*, *e.g.*, *Soc. Sec. Admin. v. Burris*, 39 M.S.P.R. 51, 55 (1988); *Soc. Sec. Admin. v. Manion*, 19 M.S.P.R. 298, 314–15 (1984); *Soc. Sec. Admin. v. Brennan*, 19 M.S.P.R. 335, 340 (1984). Here, the Board held that the directives did not interfere with Judge Abrams's decisional independence, reasoning as follows:

> The nature of these directives were [sic] not such to affect [Judge Abrams's] ability to provide full and fair hearings or to render impartial and complete decisions. They were directives to process cases and to provide information about the im-

pediments or unique circumstances of the individ-
ual cases that affected the adjudication of the
case. [Judge Abrams] has established no justifica-
tion to refuse to comply with such instructions.

Initial Decision at 59. Reviewing the directives, the
Board determined that Judge McPhail did not direct
Judge Abrams to make any specific decision on a case, but
rather, asked that the cases be moved to the next step in
processing or explain what was needed in order to move
them along. The Board concluded that "there is no evi-
dence that any of the Agency's directives suggested,
implied, or dictated how [Judge Abrams] was to adjudi-
cate the cases. The directives only instructed [Judge
Abrams] to process assigned cases to the next step if
possible, and to provide information to [Judge McPhail]
on those cases that could not be moved to the next step."
*Id.* at 60. Based on the record, the Board found "no
indication that the instructions at issue dictated the
outcome of the cases or otherwise impeded [Judge
Abrams's] ability to render impartial and complete deci-
sions." *Id.* at 61. The substance of the decisions was
within Judge Abrams's control at all times. Accordingly,
the Board's determination that the directives did not
impinge upon Judge Abrams's judicial independence is
supported by substantial evidence.

## CONCLUSION

For the foregoing reasons we conclude that the
Board's determination to remove Judge Abrams from his
position as an ALJ for the Agency is supported by sub-
stantial evidence.

## AFFIRMED