# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SOCIAL SECURITY ADMINISTRATION,<br>      Petitioner,<br><br>      v.<br><br>MARLENE R. ABRAMS,<br>      Respondent. | DOCKET NUMBERS<br>CB-7521-13-0008-T-1<br>CB-7521-14-0004-T-1<br><br><br>DATE: November 17, 2022 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Michelle M. Murray</u>, Esquire, and <u>Sharese M. Reyes</u>, Esquire, Baltimore, Maryland, for the petitioner.

<u>Patrick W. Carlson</u>, Chicago, Illinois, for the petitioner.

<u>Julie M. Brady</u>, Esquire, <u>Peter H. Noone</u>, Esquire, <u>Robert Fedder</u>, Esquire, <u>Sean M. Foley</u>, Esquire, Belmont, Massachusetts, for the respondent.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c). .

**FINAL ORDER**

¶1     The respondent administrative law judge (respondent) has filed a petition for review, and the Social Security Administration (SSA or petitioner) has filed a cross petition for review, of the initial decision, which sustained charges of unacceptable docket management and medical inability to perform, found that the respondent did not prove her disability discrimination claims, and determined that SSA had good cause to remove the respondent.  Generally, we grant petitions such as these only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative law judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review.  Therefore, we DENY the petition for review and the cross petition for review.  We MODIFY the initial decision to find that the respondent has not proven her claim of disability harassment, but a different outcome is not warranted.  Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

**BACKGROUND**

¶2     SSA proposed to suspend the respondent for 30 days based on a charge of failure to follow instructions.  *Social Security Administration v. Abrams*, MSPB Docket No. CB-7521-13-0008-T-1, Initial Appeal File (0008 IAF), Tab 1.  SSA subsequently proposed to remove the respondent based on charges of medical

inability to perform, unacceptable docket management, neglect of duties, and failure to follow instructions. *Social Security Administration v. Abrams*, MSPB Docket No. CB-7521-14-0004-T-1, Initial Appeal File (0004 IAF), Tab 1. The administrative law judge (ALJ) who was assigned to adjudicate this matter joined these appeals. 0008 IAF, Tab 85. A multi-day hearing was held. Hearing Transcripts (HTs) 1-13. The ALJ granted the respondent's request to merge the charges of unacceptable docket management and neglect of duties. 0008 IAF, Tab 162 at 10-11, Tab 166. The ALJ issued an initial decision in which he made the following findings: (1) SSA proved the unacceptable docket management and medical inability to perform charges; (2) SSA did not prove either of the failure to follow instructions charges; (3) the respondent did not prove her disability discrimination claims; and (4) SSA demonstrated good cause to remove the respondent. 0008 IAF, Tab 175, Initial Decision (ID) at 17-55.

¶3 The respondent has filed a petition for review, SSA has filed a response, and the respondent has filed a reply brief. *Social Security Administration v. Abrams*, MSPB Docket No. CB-7521-13-0008-T-1, Petition for Review (PFR) File, Tabs 3, 8-9.[2] SSA also has filed a cross petition for review, the respondent has filed a response, and SSA has filed a reply brief.[3] PFR File, Tabs 8, 10, 12.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶4 In her petition for review, the respondent argues that the ALJ erred in analyzing the unacceptable docket management charge, and she cites to "new"

---

[2] For consistency, we will only cite to the parties' submissions on review in MSPB Docket No. CB-7521-13-0008-T-1.

[3] The agency filed a motion for additional time to file a reply brief, and it filed a reply brief. PFR File, Tabs 11-12. Although our regulations do not provide for a reply to a response to a cross petition for review, we have considered the agency's reply brief.

evidence in support of this argument.[4]  PFR File, Tab 3 at 15-17.  She also asserts that the ALJ improperly analyzed her claims of disability discrimination and harassment and the relevant factors for determining if SSA had good cause to remove her.  *Id*. at 8-14, 17-26.  She further asserts that the ALJ improperly joined the appeals and issued a protective order.[5]  *Id.* at 5-8.  In its cross petition for review, SSA asserts that the ALJ improperly analyzed the failure to follow instructions charges.  PFR File, Tab 8 at 23-26.  For the following reasons, we deny the petition for review and cross petition for review, and we affirm the initial decision as modified herein.

SSA proved the unacceptable docket management charge.[6]

¶5      In the unacceptable docket management charge, SSA alleged that in fiscal year (FY) 2012, the respondent only held approximately 160 hearings, only issued approximately 144 decisions, and failed to move cases timely through

---

[4] The respondent does not appear to challenge the ALJ's conclusion that SSA proved the charge of medical inability to perform.  ID at 35-42.  We affirm the ALJ's conclusion herein.  *See Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 25 (2014) (explaining that, to establish a charge of physical inability to perform, the agency must prove a nexus between the employee's medical condition and observed deficiencies in her performance or conduct, or a high probability, given the nature of the work involved, that her condition may result in injury to herself or others).

[5] The respondent raises arguments concerning a third appeal.  PFR File, Tab 3 at 14-15; *see Abrams v. Social Security Administration*, MSPB Docket No. CB-7521-15-0031-T-1.  The Board denied Ms. Abrams' petition for review of the initial decision in that matter.  *Abrams v. Social Security Administration*, MSPB Docket No. CB-7521-15-0031-T-1, Final Order (Nov. 17, 2022).

[6] The ALJ defined the charge of "unacceptable docket management" as managing a docket in a way that prevents an ALJ from meeting, or striving for, SSA's benchmarks and goals.  ID at 21 n.3.  The ALJ further found that in order to prove the charge, SSA must show that the respondent had a duty to acceptably manage her docket, she failed to acceptably manage her docket, and the criteria relied upon by SSA allows measuring her performance in a way that sufficiently establishes she was performing inadequately.  ID at 21-22.  The respondent does not challenge the ALJ's definition of unacceptable docket management or the elements of the charge.

ALJ-controlled statuses. 0004 IAF, Tab 1 at 16-17. SSA further alleged that in FY 2013, the respondent held approximately only 66 hearings, issued approximately only 81 decisions, and failed to move cases timely through ALJ-controlled statuses. *Id.* In the initial decision, the ALJ reviewed SSA's expectations for production in terms of hearings held, decisions issued, and number of cases languishing in ALJ-controlled statuses, the respondent's low productivity during the relevant time frames, SSA's "extraordinary" efforts to assist her with docket management, and the respondent's explanations for her poor production. ID at 22-33. The ALJ concluded that the respondent was unable to effectively manage her docket and that SSA proved this charge. ID at 33-35.

¶6    We agree with the ALJ that SSA proved this charge. The record reflects that, during the relevant time frames, SSA maintained benchmarks or goals of 500-700 case dispositions per year, an average of 50 scheduled hearings per month, and 7 days in ALJ post-hearing review (ALPO) status. 0008 IAF, Tab 171 at 63, 66; HT 4 at 1011, 1017-18, 1026. The respondent's production in terms of hearings held and decisions issued fell well below these goals. ID at 11-12. In particular, SSA's evidence showed that, in FY 2012, the average days that a case on the respondent's docket was in ALPO status was 250 days, as compared to an average of 32 days for all of the ALJs in SSA's Chicago Hearing Office (except the respondent), and an average of 15-16 days for ALJs in Region V and nationally. 0008 IAF, Tab 173 at 284; HT 3 at 932-34. SSA's evidence further revealed that, in FY 2013, the average number of days that a case on the respondent's docket remained in ALPO status was 323 days, compared to an average of 35 days for ALJs in the Chicago Hearing Office, an average of 14 days for ALJs in Region V, and 16 days for ALJs nationally. 0008 IAF, Tab 173 at 284; HT 3 at 934-36.

¶7    The respondent contends on review that the underlying statistical models were flawed because SSA's data did not consider certain critical variables, such

as the complexity of each individual case, whether an ALJ had physical or mental disabilities, whether cases resulted in a favorable or unfavorable decision, and whether an ALJ received a reasonable accommodation.  PFR File, Tab 3 at 15-16. The respondent references a Work Analysis Study commissioned by the Association of Administrative Law Judges (AALJ) (hereinafter, AALJ Work Analysis Study), which was issued after the close of the record below.[7]  PFR File, Tab 3 at 17.  In its response to her petition, SSA asserts that the information contained in the AALJ Work Analysis Study concerning ALJ adjudications in fiscal years 2012 and 2013 was available and introduced before the close of the record, and the AALJ Work Analysis Study had not been found to satisfy reliability standards.  PFR File, Tab 8 at 9-10 & n.4.

¶8          We need not resolve this evidentiary issue.  Even if we assumed for the purposes of our analysis that the AALJ Work Analysis Study was reliable, and we considered its recommendations herein, a different outcome is not warranted. Notably, the respondent's production numbers in FY 2012 and 2013 were significantly less than the AALJ Work Analysis Study's "challenging goals" of 277 annual case dispositions and 23 hearings on average per month.  AALJ Work Analysis Study, Executive Summary at iii-v.  It is true that SSA's data did not account for all of the variables identified by the respondent; however, the AALJ Work Analysis Study did not account for all of the variables, either.

¶9          We also have considered the respondent's assertion that the cases assigned to her were not substantially the same or similar to the cases assigned to every

---

[7] The respondent does not include a copy of the AALJ Work Analysis Study, and she does not correctly cite to the AALJ website.  However, it appears that she is referring to a November 12, 2015 Work Analysis Study, which we have found on the www.aalj.org website. *See* Human Resources Research Organization (HumRRO), Administrative Law Judge Work Analysis Study (Nov. 12, 2015), https://www.aalj.org/wp-content/uploads/2017/08/aalj_work_analysis_study_executive_summary.pdf (last visited Nov. 15, 2022).

other ALJ in the Chicago Hearing Office.  PFR File, Tab 3 at 16 (citing *Shapiro v. Social Security Administration*, [800 F.3d 1332](#) (Fed. Cir. 2015), for the proposition that SSA was required to show the average disposition rate for a particular region across the same time period).  The respondent's reliance on *Shapiro* is not persuasive.  Importantly, the court in *Shapiro* held that, "in extreme cases . . . where [the respondent's] production is, at best, roughly a quarter of that performed by the rest of the ALJs in his region, that [fact] standing alone is highly relevant and potentially preponderant evidence that he failed to manage his cases acceptably." *Shapiro*, 800 F.3d at 1339.  Similarly, we find that the exponentially higher length of time that many of the respondent's cases languished in ALPO status constitutes relevant evidence that she did not acceptably manage her cases.  Accordingly, we affirm the ALJ's decision in this regard.

SSA did not prove the failure to follow instructions charges.

¶10        To determine whether SSA proved the failure to follow instructions charges in the suspension and removal appeals, we must first look at the directives that were issued to the respondent and her responses thereto.  The May 7, 2012 directive that was at issue in the suspension appeal ordered the respondent to "take action toward issuing a decision on [20 identified cases] by the close of business on May 18, 2012."  0008 IAF, Tab 1 at 3, Tab 171 at 261.  The directive further ordered the respondent to provide a written explanation by May 18, 2012, if she "move[d] a case into any status other than [UNWR status, which means that the case is ready to be written but has not been assigned]" or if she "fail[ed] to move one or more of these cases out of ALPO status."  0008 IAF, Tab 171 at 261.  The respondent submitted several timely responses to this directive.  *Id.* at 264-68, 270-74, 276-78.  Likewise, the January 22, 2013 directive that was at issue in the removal appeal ordered the respondent to "decide and issue decision-writing instructions on the 25 cases [identified therein] by the close of business on February 1, 2013."   0004 IAF,  Tab 1  at 17;  0008 IAF,  Tab 171

at 336-38. The directive further advised the respondent that, if she were "unable to decide and issue instructions for any of these cases during this time period," she was to provide the Hearing Office Chief ALJ with "a reason why [she was] unable to do so no later than February 1, 2013." *Id*. at 336-37. The respondent submitted several timely responses to this directive. *Id*. at 342-43, 345-52, 354-59.

¶11 The ALJ determined that the respondent's responses satisfied her obligation under the directives; the fact that SSA did not find her responses satisfactory was a different issue than whether or not she followed the instructions contained therein. ID at 20-21. We agree with the ALJ that neither directive required the respondent to submit "satisfactory" explanations; rather, she was only required to provide explanations if she were unable to move the requisite cases as directed. ID at 20-21. Her numerous responses indicate that she either moved the cases as directed or provided an explanation thereto.

¶12 We have considered SSA's citation to *Abrams v. Social Security Administration*, 703 F.3d 538 (Fed. Cir. 2012), to support its contention that it proved these charges. PFR File, Tab 8 at 23-26. *Abrams* is distinguishable from this matter, in pertinent part, because the respondent in *Abrams* "admitted that he had not fully complied with the directives," *Abrams*, 703 F.3d at 543, whereas the respondent here testified that her written responses comported with SSA's directives, HT 7 at 1944-49, 2011-17 (testimony of the respondent). For these reasons, we affirm the ALJ's determination that SSA did not prove either of the failure to follow instructions charges.

The respondent did not prove her claims of disability discrimination or harassment.

¶13 To prove disability discrimination based on a failure to accommodate, an employee must show that (1) she is an individual with a disability, as defined by

29 C.F.R. § 1630.2(g); (2) she is a qualified individual with a disability as defined by 29 C.F.R. § 1630.2(m);[8] and (3) the agency failed to provide a reasonable accommodation. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014). The ALJ made the following findings of fact concerning the respondent's medical conditions: (1) between December 2010 and January 2011, the respondent suffered a series of falls resulting in two concussions, and she was subsequently diagnosed with post-concussion syndrome; (2) she had been previously diagnosed with fibromyalgia[9] and chronic fatigue syndrome; and (3) the physical trauma resulting from her falls and long commute triggered a flare-up of her fibromyalgia symptoms. ID at 12-14. The ALJ further found that the respondent was disabled based on her conditions of post-concussion syndrome, fibromyalgia, and chronic fatigue syndrome, which substantially limited her major life activities.[10] ID at 12-14, 36-37.

¶14 The ALJ concluded, however, that the respondent was not a qualified individual with a disability because she was not able to perform the essential functions of her position—holding hearings and issuing timely decisions—with or without a reasonable accommodation. ID at 7, 43-45. In pertinent part, the ALJ noted that, as far back as 2011, the respondent requested a temporary cessation and/or reduction in the number of hearings that she had to hold, SSA provided her with several accommodations, including a reduced workload for an extended

---

[8] A qualified individual with a disability is an individual who has the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position. 29 C.F.R. § 1630.2(m).

[9] Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. Mayo Clinic, Fibromyalgia, http://www.mayoclinic.org/diseases-conditions/fibromyalgia/home/ovc-20317786 (last visited Nov. 15, 2022).

[10] The parties do not appear to challenge the ALJ's finding on review, and we affirm it herein.

period of time, a "very liberal" use of leave,[11] and additional staff for assistance and support. ID at 45-48. Notwithstanding SSA's efforts to provide the respondent with significant adjustments to her work schedule and leave flexibilities, she continued to issue relatively few dispositions and maintained a high number of cases kept in ALJ-controlled statuses for extended periods of time. ID at 47. The ALJ further found that because the respondent's conditions were triggered by stress, and being an ALJ was a stressful endeavor, there was no reasonable accommodation that would allow her to perform the essential functions of her position. ID at 48.

¶15 On review, the respondent contends that she was a qualified individual with a disability because she possessed the requisite skill, experience, and education of an ALJ, and she was able to perform all of an ALJ's functions, including holding hearings[12] and writing decisions. PFR File, Tab 1 at 9-10. She further alleges that SSA's attack on her production levels did not constitute evidence that she was unable to perform the essential functions of her position. *Id*. at 10. She contends that she did not request permanent relief from holding hearings or issuing decisions, but rather "sought accommodation from the obligation to hold hearings[] only during finite and specified time periods." *Id*. at 10-12 (emphasis in original).

¶16 The term "reasonable accommodation" means, in pertinent part, "[m]odifications or adjustments to the work environment, or to the manner or

---

[11] The ALJ noted that SSA informally allowed the respondent not to hold hearings in late August and September 2011, provided her with a drastically reduced caseload, granted her month-long leave requests for November 2012, December 2012 to January 2013, and May to June 2013, allowed her to work a part-time schedule with liberal use of leave from mid-March to May 1, 2013, and reduced her hearing schedule for March and April 2013. ID at 15-16.

[12] The respondent conceded below that holding a hearing was an essential function of the ALJ position. 0008 IAF, Tab 160 at 18.

circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position" or "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o). Thus, a reasonable accommodation may include, but is not limited to, job restructuring and part-time or modified work schedules. *Id*. Absent undue hardship,[13] a covered entity is required to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability. *Id*.

¶17    The respondent frames her requested accommodations as a "modified work schedule," PFR File, Tab 3 at 10, but she was essentially asking to be relieved of her essential functions for extended periods of time or, in 2013, an unspecified period of time. *See, e.g.*, 0008 IAF, Tab 171 at 183 (asking, in her June 2011 reasonable accommodation request, to "be excused from any new cases/hearings from at least August through September, 2011, until [her] pending cases have been resolved," and then a 50% reduction in the assignment of any "new cases/hearings" for the following 3-6 months), 332 (explaining, in her

---

[13] The ALJ mentioned in the initial decision that a reasonable accommodation does not include an accommodation that would impose an undue hardship on the operation of the agency, noted that the respondent's conditions were triggered by stress, and found that there was "no reasonable accommodation" that would allow her to perform the essential functions of the ALJ position in line with SSA's expectations. ID at 48 (emphasis in original). On review, the respondent contends that SSA's previous accommodations of temporary relief from her obligation to hold hearings or to issue decisions shows that her requested accommodation did not "present an actual, demonstrated undue hardship." PFR File, Tab 3 at 13. We need not address this argument because we find that the ALJ did not make a finding of undue hardship in the initial decision. Notably, there is no discussion in the initial decision of the relevant factors described in 29 C.F.R. § 1630.2(p) to determine whether an accommodation would impose an undue hardship, such as the nature and net cost of the accommodation, and the overall financial resources of the facilities involved and the covered entity.

January 2013 reasonable accommodation request, that her "condition does not allow [her] to be certain that [she] will be physically able to hear a case on a precise date"). We agree with the ALJ that, despite SSA's numerous informal accommodations, the respondent continued to be unable to perform the essential functions of her position and, therefore, she was not a qualified individual with a disability.

¶18     The respondent cites to *Holland v. Social Security Administration*, EEOC Appeal No. 01A01372, 2003 WL 22346114 (Oct. 2, 2003), to support her contention that an appropriate accommodation can be reducing the time that she is required to dedicate to an essential function. PFR File, Tab 3 at 10 & nn.12-13. However, the respondent misreads *Holland*. In that matter, the Equal Employment Opportunity Commission found that an essential function of the complainant's Telephone Service Representative position was "handling incoming telephone calls," but he was not required to handle a certain number of calls within a specified time or have "constant" telephone availability. *Holland*, 2003 WL 22346114, at *12-13. Here, in contrast, the respondent sought to have a reprieve from holding hearings, and in January 2013, requested a reprieve for an undetermined length of time, despite the fact that holding hearings was an essential function of her ALJ position. The respondent has not cited, and we are not aware of, any binding precedent that would require SSA to provide such an accommodation under these circumstances. *See, e.g.*, *Byrne v. Department of Labor*, 106 M.S.P.R. 43, ¶ 7 (2007) (finding that an agency is not required to lower production or performance standards, and, upon determining that the appellant was incapable of meeting the productivity requirements of his position, the arbitrator correctly concluded that the appellant was not a qualified individual with a disability because he could not perform the essential functions of his position with or without a reasonable accommodation).

¶19     We have considered the respondent's challenge to the ALJ's finding that her condition will never go into remission, PFR File, Tab 3 at 8; ID at 42, but this

argument is unavailing. The ALJ stated in the initial decision that it was "reasonable" to conclude that the respondent's fibromyalgia will never go into remission because the only way for that to happen is to eliminate stress, and the very nature of the respondent's job as an ALJ, coupled with her inability to manage her docket, "creates the impossibility of eliminating [her] stress." ID at 42. Indeed, the respondent's treating physician, who was admitted as an expert in the field of fibromyalgia, testified that patients who suffer from fibromyalgia "get better when their stress is lowered." HT 12 at 3358, 3412 (testimony of the treating physician). However, the physician acknowledged that the respondent's work was a stressor. *Id.* at 3348, 3403 (testimony of the treating physician). Given the physician's testimony, we discern no error with the ALJ's statement in the initial decision.

¶20     In sum, the respondent has not proven that she was a qualified individual with a disability. The record reflects that in 2010, prior to her falls (which resulted in the diagnosis of post-concussion syndrome and a flare-up of her fibromyalgia), the respondent was issued a Letter of Counseling concerning her failure to manage her docket in a timely and efficient manner. 0008 IAF, Tab 171 at 125-26, 138-41. However, after her falls, the record demonstrates fairly conclusively that the respondent was unable to perform the essential functions of her position with or without an accommodation. Accordingly, we agree with the ALJ that the respondent did not prove her claim of disability discrimination based on a failure to accommodate.

¶21     We also have considered the respondent's contention that SSA treated ALJ H.C. and other ALJs differently than her. In pertinent part, she asserts on review that, in fiscal year 2012, she issued more decisions and held more hearings than ALJ H.C., but ALJ H.C. was never reprimanded, disciplined, charged with unacceptable docket management, or had her removal proposed. PFR File, Tab 3 at 15. We interpret this argument as a challenge to the ALJ's conclusion that she did not prove her disparate treatment disability discrimination claim. ID at 49.

¶22    As with a claim of disability discrimination based on an agency's failure to reasonably accommodate that disability, a claim based on an individual's status as disabled requires that the individual be a qualified individual with a disability. *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28.  Further, to establish a claim of disparate treatment disability discrimination, the respondent has the burden of proving that her disability was a motivating factor in the agency's proposed suspension and removal actions.  *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 35, 37, 40, 42.  If the respondent meets her burden, the Board will then inquire whether the agency has shown by preponderant evidence that the action was not based on the prohibited personnel practice, i.e., that it still would have taken the contested action in the absence of the discriminatory motive.  *Id.*, ¶¶ 33-34.  If the Board finds that the agency has made that showing, its prohibited personnel practice will not require reversal of the action.[14]  *Id.*

¶23    As we found above, we agree with the ALJ that the respondent was not a qualified individual with a disability.  Furthermore, we agree with the ALJ that the respondent has not identified any comparators that had such deficiencies in docket management, low production, a backlog of cases, or inability to perform the essential functions of her position.  ID at 49; *see Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶ 27 (2014) (explaining that for employees to be similarly situated for purposes of a disparate treatment discrimination claim, all relevant aspects of the employee's employment situation must be "nearly identical" to those of the comparator employees).  For instance, the record reflects that ALJ H.C., a nearly 20-year employee who was diagnosed with

---

[14] Because we affirm the ALJ's finding that the respondent failed to show that any prohibited consideration was a motivating factor in the petitioner's actions, we need not resolve the issue of whether the respondent proved that discrimination was a but-for cause of the petitioner's actions. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-22, 29-33.

Stage 4 metastatic breast cancer, had her request to hold fewer hearings as an accommodation denied starting in 2012, she was issued a written directive to schedule more hearings in May 2013, but, in the following fiscal year, she issued more decisions and held more hearings than she had in previous years. 0008 IAF, Tab 174 at 666-68; HT 11 at 3160-61, 3189-91, 3195-96, 3199-3201. Therefore, we agree with the ALJ that the respondent has not proven her disparate treatment disability discrimination claim.[15]

SSA proved that it had good cause to remove the respondent.

¶24    Under 5 U.S.C. § 7521(a), "[a]n action may be taken against an [ALJ] . . . only for good cause established and determined by the Merit Systems Protection Board on the record after an opportunity for a hearing." *Abrams*, 703 F.3d at 543; *Jennings v. Social Security Administration*, 123 M.S.P.R. 577, ¶ 27 (2016). There is no statutory definition of good cause; thus, the interpretation of the term is left to the adjudicatory process and the facts of each case. *Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 13 (2010), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011). SSA must prove good cause by preponderant evidence. *Id.*, ¶ 12. The Board has made clear that the term "good cause" is not the equivalent of the efficiency of the service standard in cases arising in adverse action appeals pursuant to 5 U.S.C. § 7513, but chapter 75 appeals can provide some guidance

---

[15] The respondent reiterates her claim, made below, that SSA harassed her based on her disability and reasonable accommodation requests by, among other things, issuing many directives to her. PFR File, Tab 3 at 17-25; 0008 IAF, Tab 160 at 5-15. The ALJ did not explicitly address this claim in the initial decision, and we modify the initial decision herein to do so. The respondent identifies on review the following legal standard for such a claim: (1) a qualified individual with a disability; (2) subject to unwelcome conduct or harassment; (3) based on the individual's disability; (4) that unreasonably interfered with work performance or created a hostile work environment; and (5) there is a basis for imputing liability on the employer. PFR File, Tab 3 at 17-18 (citing *Wagner v. Department of Transportation*, EEOC Appeal No. 0120103125, 2010 WL 4972778 (Dec. 1, 2010)). Because we have found that the respondent is not a qualified individual with a disability, she also could not prevail on this claim.

for determining what is good cause for an action against an ALJ. *Id.*, ¶ 13. Because we have affirmed the ALJ's finding that SSA proved the charges of unacceptable docket management and medical inability to perform, we find that there is good cause to discipline the respondent. ID at 21-42.

¶25    In original jurisdiction cases such as this under 5 U.S.C. § 7521, it is the Board, rather than the employing agency, which selects the penalty. *Long*, 113 M.S.P.R. 190, ¶ 47. The Board does not defer to SSA's penalty selection, but it uses the factors articulated in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), to guide its penalty determination. *Long*, 113 M.S.P.R. 190, ¶ 47. In the initial decision, the ALJ discussed several of the relevant *Douglas* factors, and he ultimately concluded that SSA demonstrated good cause to remove the respondent. ID at 49-55. On review, the respondent contends that her medical conditions warrant mitigation. PFR File, Tab 3 at 15, 25-26. We have considered this argument, but a different outcome is not warranted.

¶26    The respondent correctly notes that evidence that an employee's medical condition played a part in the charged conduct is ordinarily entitled to considerable weight as a mitigating factor. PFR File, Tab 3 at 25; *see Malloy v. U.S. Postal Service*, 578 F.3d 1351, 1357 (Fed. Cir. 2009); *Bowman v. Small Business Administration*, 122 M.S.P.R. 217, ¶ 13 (2015); *Roseman v. Department of the Treasury*, 76 M.S.P.R. 334, 345 (1997). In the initial decision, the ALJ noted the respondent's "several serious medical conditions" were mitigating factors. ID at 54-55. The ALJ found, however, that the mitigating circumstances were "lessened" because the respondent was unable to manage her case docket prior to any flare-up of her chronic conditions. *Id.*

¶27    We agree with the ALJ regarding the weight to be attributed to the respondent's medical conditions. In *Mingledough v. Department of Veterans Affairs*, 88 M.S.P.R. 452, ¶ 12 (2001), the Board noted that a medical condition was not a significant mitigating factor absent evidence that the impairment can be remedied or controlled, i.e., when the potential for rehabilitation was poor. We

agree with the ALJ that there is not a good potential for rehabilitation because the respondent has been unable to manage her docket since she began her tenure as an SSA ALJ, which is before she had her two falls, was diagnosed with post-concussion syndrome, or experienced any flare-up of her fibromyalgia symptoms, and her work as an ALJ was inherently stressful and would likely result in additional flare-ups. ID at 53-54. Accordingly, we have considered evidence surrounding her conditions, but we find that they do not outweigh other relevant factors, such as the nature and seriousness of the offenses. *See, e.g.*, *Long*, 113 M.S.P.R. 190, ¶ 48 (explaining that the Board considers first and foremost the seriousness of the charged conduct and its relationship to the employee's position and duties).

¶28 For the reasons discussed herein and in the initial decision, we concur with the ALJ that SSA has shown good cause to remove the respondent under 5 U.S.C. § 7521. *See, e.g.*, *Shapiro*, 800 F.3d at 1340 (finding no error in the Board's removal of the respondent based on a charge of unacceptable performance); *Social Security Administration v. Mills*, 73 M.S.P.R. 463, 467-75 (1996) (finding that an ALJ's long-term absence from duty as a result of a disability with no realistic chance of return, coupled with the agency's demonstrated need to fill the position, constituted good cause for removal under 5 U.S.C. § 7521), *aff'd*, 124 F.3d 228 (Fed. Cir. 1997) (Table).

We discern no error with the ALJ's decision to join the appeals or to issue the protective order.

¶29 We have considered the respondent's argument that, in joining the suspension and removal appeals, the ALJ denied her the opportunity to "learn from her mistakes" and was counter to the principle of progressive discipline. PFR File, Tab 3 at 5-6. SSA, in its response, asserts that joinder is appropriate in cases involving successive disciplinary petitions, cites to 5 C.F.R. § 1201.36, and states that the respondent does not challenge that there are common witnesses,

evidence, and affirmative defenses between the two matters. PFR File, Tab 8 at 20.

¶30 We agree with SSA and the ALJ that joinder was appropriate. The regulation at 5 C.F.R. § 1201.36(b) states that an ALJ may join cases if doing so would expedite processing of the cases and not adversely affect the interests of the parties. The respondent has not identified how her interests were adversely affected when, as here, she was on notice of her performance deficiencies as early as December 2010. Moreover, when there is voluminous evidence and witnesses in common, we see no basis to preclude joinder in the absence of such an adverse effect. *See, e.g.*, *Abrams*, 703 F.3d at 540-42 (noting that the three complaints, involving a 14-day suspension, a 30-day suspension, and a removal, were "combined").

¶31 Finally, the record reflects that SSA filed a motion for a protective order to protect personal medical records of claimants, personnel information about other employees, and its internal deliberations that would be provided to the respondent during discovery, and the ALJ granted this request over the respondent's objection. 0008 IAF, Tabs 16, 20. The respondent asserts on review that the protective order denied her rights as set forth in 5 C.F.R. § 1201.139(b)(2), which states in pertinent part that, when an agency files a complaint proposing an action against an ALJ, the ALJ has a right to be represented. PFR File, Tab 3 at 6-8. In particular, the respondent asserts that her right to representation was limited because the protective order "imposed broad restrictions upon [her] ability to provide her counsel with materials and information." *Id*. at 7. She appears to contend that she was unable to share any document that she authored or received in the course of her work as an ALJ, including to supervisors or doctors, nor could she share with her attorney any emails that she may have sent to her supervisor that contained protected whistleblowing or other disclosures. *Id*.

¶32 The Board will not reverse an administrative judge's rulings on discovery matters absent an abuse of discretion. *Wagner v. Environmental Protection*

*Agency*, 54 M.S.P.R. 447, 452 (1992), *aff'd*, 996 F.2d 1236 (Fed. Cir. 1993) (Table). The abuse-of-discretion standard is a very high standard and allows for great deference. *Pecard v. Department of Agriculture*, 115 M.S.P.R. 31, ¶ 15 (2010). We have reviewed the protective order. However, we are not persuaded that the ALJ's decision to grant SSA's request for a protective order constituted an abuse of discretion because it does not appear to prohibit the respondent from sharing with her attorney any documentation that she deemed essential to her defense in these matters.

¶33      Accordingly, the initial decision is affirmed, except as modified herein.

## ORDER

¶34      The Board authorizes SSA to remove the respondent from her ALJ position for good cause shown, pursuant to 5 U.S.C. § 7521.

## NOTICE OF APPEAL RIGHTS[16]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[16] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[17]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[17]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                         /s/ for
                                       Jennifer Everling
                                       Acting Clerk of the Board

Washington, D.C.